**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**

ALTA Owner's Policy of Title Insurance

**SCHEDULE B**
*(continued)*

File No.: **ORN6872**                                                                                    Policy No.: **OX-10336619**

21.   Terms, conditions and covenants and restrictions as in Declaration of Covenants and Restrictions as in
      Deed Book 3547, page 462; 1st Supplementary in Deed Book 3548, page 523 and Deed Book 3597, page
      855; Second Supplementary Declaration of Covenants and Restrictions in Deed Book 3628, page 918;
      Resolutions as in Deed Book 4672, page 355; deed Book 5626, page 666 and Deed Book 5699, page
      225; Resolution in Book 6413, page 801; Resolution in Book 6530, page 70 and those amendments as
      the same may now or hereafter be lawfully amended.

22.   Mortgage from Ruth T. McLean, an unmarried woman, to Gateway Mortgage Group, LLC in the original
      principal amount of $170,000.00 dated November 21, 2016, and recorded December 30, 2016, in the
      Clerk's Office of Middlesex County, New Jersey in Book 16602, Page 200.

# STATE OF NEW JERSEY



# COUNTY OF MIDDLESEX

I, **Nancy J. Pinkin**, Clerk of the County of Middlesex do hereby certify that the

foregoing is a true, full and complete copy of   NOTICE OF SETTLEMENT

PATRICIA J EHRHART

TO

RUTH T MCLEAN

TO

GATEWAY MORTGAGE GROUP LLC

as the same is now of record in the Clerk's Office of Middlesex County in

Book 2381                NOS                        467

File                                                 NO



**WITNESS MY HAND,** and official Seal of
                 said Court at New Brunswick, this  17TH
day of JULY          2023

NANCY J. PINKIN, MIDDLESEX COUNTY CLERK

MIDDLESEX COUNTY CLERK

Return To:

 CORTES & HAY TITLE AGENCY, INC.
 110 MAIN STREET
 P.O. BOX 454
 FLEMINGTON, NJ  08822

Index   NOTICE SETTLEMENT

Book    02381     Page   0467

No. Pages    0001

Instrument   NOTICE OF SETTL

Date :    11/02/2016

Time :     2:01:16

Control #    201611020432

INST#        NS 2016 016067

EHRHART
PATRICIA        J.

Employee ID    BOCZOI

| | | |
|---|---|---|
| RECORDING | $ | 30.00 |
| DARM | $ | 6.00 |
| NJPRPA | $ | 4.00 |
| - - - - - | $ | .00 |
| EFILE FEE | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |

Total:      $      40.00

STATE OF NEW JERSEY
MIDDLESEX COUNTY CLERK

PLEASE NOTE
DO NOT REMOVE THIS COVERSHEET
IT CONTAINS ALL RECORDING INFORMATION

ELAINE FLYNN
COUNTY CLERK



201611020432



**Cover sheet is part of Middlesex County filing record**

**Retain this page for future reference**

**Not part of the original submitted document**

DO NOT REMOVE THIS PAGE.
TO ACCESS THE IMAGE OF
THE DOCUMENT RECORDED
HEREUNDER BY BOOK AND
PAGE NUMBER, USE THE
BOOK AND PAGE NUMBER
ABOVE.

B02381 P0467

# STATE OF NEW JERSEY



## COUNTY OF MIDDLESEX

I, **Nancy J. Pinkin**, Clerk of the County of Middlesex do hereby certify that the

foregoing is a true, full and complete copy of   NOTICE OF SETTLEMENT

PATRICIA  J  EHRHART

TO

RUTH  T MCLEAN

 TO

GATEWAY  MORTGAGE  GROUP  LLC

as the same is now of record in the Clerk's Office of Middlesex County in

Book 2381                          NOS                          467

File                                                          NO



**WITNESS MY HAND,** and official Seal of
        said Court at New Brunswick, this  17TH
day of JULY            2023

NANCY J. PINKIN, MIDDLESEX COUNTY CLERK

DEPARTMENT OF THE TREASURY
Division of Revenue and Enterprise Services
Business Support Services, Commercial Recording
P.O. Box 308
Trenton, NJ  08646
Session Number: 3185728

| FEE CODE | FEE DESCRIPTION | FEE | QTY | TOTAL |
|----------|-----------------|-----|-----|-------|
| CERFEE | CERTIFICATE FEE | 25.00 | 1 | $0.00 |
| EXPIN2 | EXPEDITED | 15.00 | 1 | $0.00 |
| | | | JOB TOTAL: | $0.00 |

PREVIOUS REJECTION REASONS:
   014    OTHER                      04/11/2023

JOB REJECTION REASONS:
   021    DOCUMENTS MUST BE NOTORIZED BY A NJ NOTARY    04/11/2023
   INK    MUST BE ORIGINAL INKED SIGNATURE    04/11/2023
   NWS    NOTARY MUST WITNESS ANOTHER PERSONS SIGNATURE    04/11/2023

**Job 2 :**               **Job Completion Status: S  SUSPENDED (JOB)**
Session Number: 3185728
Work Description: APOSTL  APOSTILLES
Job Number: 5687865
Filing Number:
Processed Date:  11-APR-23
Entity Name:
Comments On Job:

| FEE CODE | FEE DESCRIPTION | FEE | QTY | TOTAL |
|----------|-----------------|-----|-----|-------|
| CERFEE | CERTIFICATE FEE | 25.00 | 1 | $0.00 |
| EXPIN2 | EXPEDITED | 15.00 | 1 | $0.00 |
| | | | JOB TOTAL: | $0.00 |

PREVIOUS REJECTION REASONS:
   014    OTHER                      04/11/2023

Continued on next page ...

**OFFICIAL RECEIPT   \* \* \* T H I S  I S  N O T  A  B I L L \* \* \***
\* Please retain a copy for your records to verify check and credit card billing.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.



_____ (Seal)        _____ (Seal)
Ruth T McLean                -Borrower                                      -Borrower

STATE OF NEW JERSEY, _SOMERSET_____ County ss:

On this _21st_ day of _NOVEMBER_, _2016_, before me, the subscriber, personally appeared **Ruth T McLean** who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein expressed.

_____
Notary Public

Loan originator (organization): **Gateway Mortgage Group, LLC**; NMLS #: **7233**
Loan originator (individual): **Dorothy Clavin**; NMLS #: **287224**

— THIS MORTGAGE DOCUMENT
IS MISSING A NOTARY NAME,
COMMISSION DATE, SEAL
IDENTIFICATION NUMBER



## NOTE

November 21, 2016

Plainsboro, NEW JERSEY

143 Hampshire Dr
Plainsboro, NEW JERSEY 08536
(Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $170,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Gateway Mortgage Group, LLC. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.625%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on January 1, 2017. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1, 2046, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

Gateway Mortgage Group, LLC
244 South Gateway Place
Jenks, OKLAHOMA  74037-3448
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $775.29.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 3

Form 3200   1/01

Borrower(s) Initials

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due. The amount of the charge will be **5.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3200   1/01
Page 2 of 3

Borrower(s) Initials

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____ (Seal)          _____ (Seal)
Ruth T McLean                    -Borrower                                        -Borrower
                                                                          *(Sign Original Only)*

Pay to the order of:
Without Recourse
Gateway Mortgage Group, LLC

By:
☑ J. Kevin Stitt          President
☐ Jason McPherson         VP Post Operations
☐ Melinda Baysal          Post Closing Manager
☐ Rebecca Sales           Investor Accounting Supervisor

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200   1/01
Page 3 of 3

NMLS# 7233 ; Originator: Dorothy Clavin, NMLS# 287224

Loan Number: **13111969**

MIN: **100287715001087753**

*McCann*

*376714735*

*100058 3850*

*2*

# NOTE

November 21, 2016

Plainsboro, NEW JERSEY

143 Hampshire Dr
Plainsboro, NEW JERSEY 08536
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $170,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Gateway Mortgage Group, LLC**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.625%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **January 1, 2017**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **December 1, 2046**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

Gateway Mortgage Group, LLC
244 South Gateway Place
Jenks, OKLAHOMA   74037-3448

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$775.29**.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200   1/01
Page 1 of 3
Borrower(s) Initials

IDS, Inc. - 31956

NMLS# 7233 ; Originator: Dorothy Clavin, NMLS# 287224

MIN: **100287715001087753**

Loan Number: **13111969**

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due. The amount of the charge will be **5.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

---

**MULTISTATE FIXED RATE NOTE** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Page 2 of 3

Form 3200   1/01

Borrower(s) Initials 

IDS, Inc. - 31956

NMLS# 7233 ; Originator: Dorothy Clavin, NMLS# 287224

MIN: **100287715001087753**

Loan Number: **13111969**

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                                 _____ (Seal)
**Ruth T McLean**              -Borrower                                                          -Borrower
                                                                                          *(Sign Original Only)*

Loan originator (organization): **Gateway Mortgage Group, LLC**; NMLS #: 7233
Loan originator (individual): **Dorothy Clavin**; NMLS #: 287224



Pay to the order of:
Without Recourse
Gateway Mortgage Group LLC

By: _____
☑ J. Kevin Stitt       President
☐ Jason McPherson   VP Post Operations
☐ Malinda Boysel     Post Closing Manager
☐ Rebecca Salas      Investor Accounting Supervisor

2

---

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT               Form 3200  1/01
Page 3 of 3

IDS, Inc. - 31956

## Affidavit of Title

STATE OF NEW JERSEY

COUNTY OF MIDDLESEX  } ss.

**Ruth T. McLean, single** says under oath:

1. **Representations.** If only one person signs this affidavit the words "we," "us" and "our" shall mean "I," "me" and "my." The statements in this affidavit are true to the best of our knowledge, information and belief.

2. **Name, Age and Residence.** We have never changed our names or used any other names. We are citizens of the United States and at least 18 years old. After today, we will live at **143 Hampshire Drive, Plainsboro, NJ 08536**.

3. **Ownership and Possession.** We are the only owners of property located at **143 Hampshire Drive, Plainsboro, NJ 08536**, called "this property."

We now mortgage this property to **Gateway Mortgage Group, LLC**.

The date of the mortgage is the same as this affidavit. This mortgage is given to secure a loan of $ **170,000.00**. We are in sole possession of this property. There are no tenants or other occupants of this property. We have owned this property since **November 21, 2016**. Since then, no one has questioned our ownership or right to possession. We have never owned any property which is next to this property.

4. **Improvements.** No additions, alterations or improvements are now being made or have been made to this property since the date hereof. We have always obtained all necessary permits and certificates of occupancy. All charges for municipal improvements such as sewers, sidewalks, curbs or similar improvements benefiting this property have been paid in full. No building, addition, extension or alteration on this property has been made or worked on within the past four months. We are not aware that anyone has filed or intends to file a mechanic's lien or building contract relating to this property. No one has notified us that money is due and owing for constructions, alteration or repair work on this property.

5. **Liens or Encumbrances.** We have not allowed any interests (legal rights) to be created which affect our ownership of use of this property. No other persons have legal rights in this property, except the rights of utility companies to use this property along the road or for the purpose of serving this property. There are no pending lawsuits or judgments against us or other legal obligations which may be enforced against this property. No bankruptcy or insolvency proceedings have been started by or against us. We have never been declared bankrupt. No one has any security interest in any personal property or fixtures on this property. All liens (legal claims, such as judgments) listed on the attached judgment or lien search are not against us, but against others with similar names.

6. **Marital History.** (check where appropriate)

   [X]   We are not married.
   [ ]   We are married to each other. We were married on _____.
          The maiden name of _____ was _____.
   [ ]   We are a legal registered Domestic Partnership in _____.
   [ ]   This property has never been occupied as the principal matrimonial residence of any of us. (If it has, or if it was acquired before May 28, 1980, each spouse must sign the mortgage and affidavit N.J.S. 3B:28-2,3.)
   [X]   Our complete marital history is listed above.
   [ ]   Our complete marital history is listed below under paragraph number 7. This includes all marriages not listed above, and any pending matrimonial actions. We include how each marriage ended. We have attached copies of any death certificates and judgments for divorce or annulment including any provisions in these judgments which relate to this property.

7. **Exceptions and Additions.** The following is a complete list of exceptions and additions to the above statements. This includes all liens or mortgages which are not being paid off as a result of this mortgage, as well as marital information not particularly set forth in paragraph 6 above.

   **The undersigned hereby certifies that there are no recognizances filed against me or either principal or surety or against the property which is the subject of this transaction.**

8. **Child Support.**
   [X]   There are no outstanding child support orders or judgments against this deponent.
   [ ]   There is a child support order outstanding, Docket No. _____, against this deponent. All payments, however, are current as of this date.

9. **Reliance.** We make this affidavit in order to obtain the mortgage loan. We are aware that our lender will rely on our truthfulness and the statements made in this affidavit.

Signed and sworn to before me on
11/21/16.

_____          _____
Notary Public                                            Ruth T. McLean

MIDDLESEX COUNTY CLERK

Return To:

    CORTES & HAY, INC.
    110 MAIN STREET
    PO BOX 454
    FLEMINGTON, NJ 08822

EHRHART
PATRICIA        J.

| Index | DEED BOOK |
|---|---|
| Book | 06913   Page  0064 |
| No. Pages | 0005 |
| Instrument | DEED STANDARD |
| Date : | 12/30/2016 |
| Time : | 9:25:25 |
| Control # | 201612300041 |
| INST# | DE 2016 018800 |

Employee ID  ADAMSS

| RTF TIERS | | |
|---|---|---|
| RECORDING | $ | 45.00 |
| NJPRPA | $ | 8.00 |
| DARM | $ | 12.00 |
| DARM 3.00 | $ | 3.00 |
| NJPRPA | $ | 2.00 |
| - - - - - | $ | .00 |
| DD1 T1 CO | $ | 150.00 |
| DD1 T1 PU | $ | 75.00 |
| DD1 T1 ST | $ | 375.00 |
| All Other | $ | 1,433.90 |
| Total: | $ | 2,103.90 |

| | | |
|---|---|---|
| Consideration | $ | 340,500.00 |
| Tier 1 Standard RTF | $ | 600.00 |
| Tier 2 Standard RTF | $ | 335.00 |
| Tier 3 Standard RTF | $ | 1,095.90 |
| Total | $ | 2,030.90 |

STATE OF NEW JERSEY
MIDDLESEX COUNTY CLERK

PLEASE NOTE
DO NOT REMOVE THIS COVERSHEET
IT CONTAINS ALL RECORDING INFORMATION

ELAINE FLYNN
COUNTY CLERK



201612300041



**DO NOT REMOVE THIS PAGE.
TO ACCESS THE IMAGE OF
THE DOCUMENT RECORDED
HEREUNDER BY BOOK AND
PAGE NUMBER, USE THE
BOOK AND PAGE NUMBER
ABOVE.**

**Cover sheet is part of Middlesex County filing record**

**Retain this page for future reference**

**Not part of the original submitted document**

B06913 P0064

73-

# 𝕯𝖊𝖊𝖉

RECORDED
ELAINE M. FLYNN
MIDDLESEX CTY CLERK

2016 DEC 30  AM 9: 32

BOOK #_____
PAGE #_____

This Deed is made on **Nov 21, 2016**
**BETWEEN PATRICIA J. EHRHART**
**Unmarried**
whose post office address is **17306 Pinewater Drive**
**Lewes, Delaware  09958**

referred to as the Grantor,
**AND  RUTH T. McLEAN**
**Single**
whose post office address is **2314 Ravens Crest Drive**
**Plainsboro, New Jersey  08536**

referred to as the Grantee.

The words "Grantor" and "Grantee" shall mean all Grantors and all Grantees listed above.

1.  **Transfer of Ownership.**  The Grantor grants and conveys (transfers ownership of) the property (called the "Property") described below to the Grantee. This transfer is made for the sum of **$340,500.00**_____.

**Three Hundred Forty Thousand Five Hundred Dollars and No Cents**_____.

The Grantor acknowledges receipt of this money.

2.  **Tax Map Reference.**  (N.J.S.A. 46:26A-3) Municipality of **Plainsboro**_____

Block No. __**2501**__, Lot No. _____**143**_____, Qualifier No. _____ and Account No. _____.

☐  No lot and block or account number is available on the date of this Deed. (Check box if applicable.)

3.  **Property.**  The Property consists of the land and all the buildings and structures on the land in the ~~Village~~ **Township**
of **Plainsboro**_____, County of **Middlesex**_____ and State of New Jersey.

The legal description is:

☒  Please see attached Legal Description annexed hereto and made a part hereof. (Check box if applicable.)
**Being the same land and premises conveyed to Patricia J. Ehrhart by Deed from Richard A. Rollman and**
**Lori A. Rollman, husband and wife, dated May 24, 1993, and recorded in the Middlesex County Clerk's**
**Office on June 10, 1993, in Deed Book 4065, Page 323.**

**Subject to easements and restrictions of record.**

DD¹
H

Prepared by:

_Craig A. Cox_
**Craig A. Cox, Esquire**

(For Recorder's Use Only)

103 - Deed - Bargain and Sale Cov. to Grantor's Act -
Ind. to Ind. or Corp. Plain Language
Rev. 5/12   P2/14

Powered by
HOTdocs

©2012 by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510          Page 1

B06913 P0065

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY
COMMITMENT FOR TITLE INSURANCE

SCHEDULE A
(Continued)

File No. **ORN6872**

LEGAL DESCRIPTION

ALL that certain lot, parcel or tract of land, situate and lying in the Township of Plainsboro, County of Middlesex, State of New Jersey, and being more particularly described as follows:

Beginning at a point located at the most southwesterly corner of Lot 143 as shown on a certain map entitled "Final Subdivision Plan of Hampshire Townhouse, Section 2B – Phase I for Linpro Plainsboro Multi-Family I, Inc." filed in the Middlesex County Clerk's/Register's office on 11/14/1986 as Map No. 974, said point being located the following three courses from the westerly line of the herein mentioned File map with the northerly line of Plainsboro Road;

(a)     Along the northerly line of Plainsboro Road, S. 82 degrees 34 minutes 44 seconds E. 21.11' to a point and thence,

(b)     N. 07 degrees 25 minutes 16 seconds E. 91.55' to a point and thence,

(c)     N. 08 degrees 20 minutes37 seconds W. 102.01' to the point or place of beginning and thence.

(1)     N. 08 degrees 20 minutes 37 seconds W. 22.01' to a point and thence,

(2)     N. 81 degrees 39 minutes 23 seconds E. 19.37' to a point and thence,

(3)     N. 08 degrees 20 minutes 37 seconds W. 2.58' to a point and thence,

(4)     N. 81 degrees 39 minutes 23 seconds E. 5.67' to a point and thence,

(5)     S. 08 degrees 20 minutes 37 seconds E. 2.58' to a point and thence,

(6)     N. 81 degrees 39 minutes 23 seconds E. 25.01' to a point and thence,

(7)     S. 08 degrees 20 minutes 37 seconds E. 17.50' to a point and thence,

(8)     N. 81 degrees 39 minutes 23 seconds E.4.67' to a point and thence,

(9)     S. 08 degrees 20 minutes 37 seconds E. 4.51' to a point and thence,

(10)    S. 81 degrees 39 minutes 23 seconds W., passing to, through and beyond a partition wall dividing the house herein described and the house on the south, 54.72' to the point or place of beginning.

The above description is in accordance with a survey prepared by Brunswick Surveying, Inc. dated 10/28/2016 as File No. 1690-16.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 143 in Block 2501 (f/k/a Block 10.03, Lot 143) on the Township of Plainsboro Tax Map.

ORT Form 4308 NJ
NJRB 3-07 Effective: 02/15/07 Revised: 09/10/07

ALTA Title Insurance Commitment Adopted 08/17/06

B06913 P0066

The street address of the Property is:
**143 Hampshire Drive, Plainsboro, New Jersey**

**4. Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the Property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the Property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**5. Signatures.** The Grantor signs this Deed as of the date at the top of the first page. (Print name below each signature.)

Witnessed or Attested by:

_Kristen H. Hamilton_ _____     _Patricia J Ehrhart_ _____ (Seal)
                                               PATRICIA J. EHRHART

_____     _____ (Seal)

STATE OF NEW JERSEY, COUNTY OF _Middlesex_      SS:

I CERTIFY that on _November 9, 2016_

**PATRICIA J. EHRHART**

personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of this Deed; and,
(b) executed this Deed as his or her own act; and
(c) made this Deed for $ _340,500.00_ _____ as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A. 46:15-5.)

RECORD AND RETURN TO:
Amrill Salcedo-Alonzo, Esquire

Village Shopping Plaza
1075 Easton Avenue, Tower 2, Suite 6
Somerset, New Jersey  08873

_Kristen H. Hamilton_ _____

Print name and title below signature KRISTEN H. HAMILTON
Notary Public State of New Jersey
NO. 2408115
Commission Expires May 02, 2021

**Cortes & Hay, Inc.**
**110 Main Street**
**P.O. Box 454**
**Flemington, NJ 08822**

103 - Deed - Bargain and Sale Cov. to Grantor's Act -
Ind. to Ind. or Corp. Plain Language
Rev. 5/12   P2/14

©2012 by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com  800.222.0510  Page 2

Powered by
HOTDOCS

B06913 P0067



State of New Jersey
## SELLER'S RESIDENCY CERTIFICATION/EXEMPTION

GIT/REP-3
(9-2015)

(Please Print or Type)

### SELLER'S INFORMATION

Name(s)
Patricia J. Ehrhart

Current Street Address
17306 Pinewater Drive

| City, Town, Post Office Box | State | Zip Code |
|---|---|---|
| Lewes | DE | 09958 |

### PROPERTY INFORMATION

| Block(s) | Lot(s) | Qualifier |
|---|---|---|
| 2501 | 143 | |

Street Address
143 Hampshire Drive

| City, Town, Post Office Box | State | Zip Code |
|---|---|---|
| Plainsboro | NJ | 08536 |

| Seller's Percentage of Ownership | Total Consideration | Owner's Share of Consideration | Closing Date |
|---|---|---|---|
| 100% | $340,500.00 | XXX,XXX $340,500.00 | 11/21/2016 |

### SELLER'S ASSURANCES (Check the Appropriate Box)  (Boxes 2 through 14 apply to Residents and Nonresidents)

1. [X] Seller is a resident taxpayer (individual, estate, or trust) of the State of New Jersey pursuant to the New Jersey Gross Income Tax Act, will file a resident gross income tax return, and will pay any applicable taxes on any gain or income from the disposition of this property.
2. [ ] The real property sold or transferred is used exclusively as a principal residence as defined in 26 U.S. Code section 121.
3. [ ] Seller is a mortgagor conveying the mortgaged property to a mortgagee in foreclosure or in a transfer in lieu of foreclosure with no additional consideration.
4. [ ] Seller, transferor, or transferee is an agency or authority of the United States of America, an agency or authority of the State of New Jersey, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, or a private mortgage insurance company.
5. [ ] Seller is not an individual, estate, or trust and is not required to make an estimated gross income tax payment.
6. [ ] The total consideration for the property is $1,000 or less so the seller is not required to make an estimated income tax payment.
7. [ ] The gain from the sale is not recognized for federal income tax purposes under 26 U.S. Code section 721, 1031, or 1033 (CIRCLE THE APPLICABLE SECTION).  If the indicated section does not ultimately apply to this transaction, the seller acknowledges the obligation to file a New Jersey income tax return for the year of the sale and report the recognized gain.
   [ ] Seller did not receive non-like kind property.
8. [ ] The real property is being transferred by an executor or administrator of a decedent to a devisee or heir to effect distribution of the decedent's estate in accordance with the provisions of the decedent's will or the intestate laws of this State.
9. [ ] The real property being sold is subject to a short sale instituted by the mortgagee, whereby the seller agreed not to receive any proceeds from the sale and the mortgagee will receive all proceeds paying off an agreed amount of the mortgage.
10. [ ] The deed is dated prior to August 1, 2004, and was not previously recorded.
11. [ ] The real property is being transferred under a relocation company transaction where a trustee of the relocation company buys the property from the seller and then sells the house to a third party buyer for the same price.
12. [ ] The real property is being transferred between spouses or incident to a divorce decree or property settlement agreement under 26 U.S. Code section 1041.
13. [ ] The property transferred is a cemetery plot.
14. [ ] The seller is not receiving net proceeds from the sale. Net proceeds from the sale means the net amount due to the seller on the settlement sheet.

### SELLER'S DECLARATION

The undersigned understands that this declaration and its contents may be disclosed or provided to the New Jersey Division of Taxation and that any false statement contained herein may be punished by fine, imprisonment, or both.  I furthermore declare that I have examined this declaration and, to the best of my knowledge and belief, it is true, correct and complete.  By checking this box ☐ I certify that a Power of Attorney to represent the seller(s) has been previously recorded or is being recorded simultaneously with the deed to which this form is attached.

| 11-9-16 | _Patricia J Ehrhart_ |
|---|---|
| Date | Signature |
| | (Seller)  Please indicate if Power of Attorney or Attorney in Fact |

| | |
|---|---|
| Date | Signature |
| | (Seller)  Please indicate if Power of Attorney or Attorney in Fact |

B06913 P0068

# STATE OF NEW JERSEY



## COUNTY OF MIDDLESEX

I, **Nancy J. Pinkin**, Clerk of the County of Middlesex do hereby certify that the

foregoing is a true, full and complete copy of    DEED

    PATRICIA  J  EHRHART

    TO

    RUTH  T MCLEAN

as the same is now of record in the Clerk's Office of Middlesex County in

Book 6913          DEED               64

File                                 NO



**WITNESS MY HAND,** and official Seal of
    said Court at New Brunswick, this  17TH
day of  JULY        2023

NANCY J. PINKIN, MIDDLESEX COUNTY CLERK

# STATE OF NEW JERSEY



## COUNTY OF MIDDLESEX

I, Nancy J Pinkin, Clerk of the County of Middlesex do hereby certify that the foregoing is a true, full and complete copy of  MORTGAGE

RUTH T MCLEAN

TO

GATEWAY MORTGAGE GROUP LLC

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC

as the same is now of record in the Clerk's Office of Middlesex County in

Book 16602                    Of  MORTGAGE              Page 200

File                                         No



**WITNESS MY HAND,** and official Seal of
said Court at New Brunswick, this 10TH
day of APRIL , 2023

*Nancy J Pinkin*

NANCY J PINKIN MIDDLESEX COUNTY CLERK

MIDDLESEX COUNTY CLERK

Return To:

    CORTES & HAY, INC.
    110 MAIN STREET
    PO BOX 454
    FLEMINGTON, NJ 08822

| | |
|---|---|
| Index | MORTGAGE BOOK |
| Book  16602  Page  0200 | |
| No. Pages  0015 | |
| Instrument  MORTGAGE | |
| Date :  12/30/2016 | |
| Time :  9:25:25 | |
| Control #  201612300043 | |

MCLEAN
RUTH           T

INST#      MG 2016 026520

Employee ID   ADAMSS

| | | |
|---|---|---|
| RECORDING | $ | 90.00 |
| DARM | $ | 42.00 |
| NJPRPA | $ | 28.00 |
| - - - - - | $ | .00 |
| RECORDING | $ | 3.00 |
| EFILE FEE | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| Total: | $ | 163.00 |

STATE OF NEW JERSEY
MIDDLESEX COUNTY CLERK

PLEASE NOTE
DO NOT REMOVE THIS COVERSHEET
IT CONTAINS ALL RECORDING INFORMATION

ELAINE FLYNN
COUNTY CLERK



201612300043

**Cover sheet is part of Middlesex County filing record**

**Retain this page for future reference**

**Not part of the original submitted document**

DO NOT REMOVE THIS PAGE.
TO ACCESS THE IMAGE OF
THE DOCUMENT RECORDED
HEREUNDER BY BOOK AND
PAGE NUMBER, USE THE
BOOK AND PAGE NUMBER
ABOVE.

B16602 P0200

*R + R*                               *163°*

**Cortes & Hay, Inc.**
**110 Main Street**
**P.O. Box 454**
**Flemington, NJ 08822**

RECORDED
ELAINE M. FLYNN
MIDDLESEX CTY CLERK

2016 DEC 30   AM 9: 32

BOOK #_____
PAGE #_____

Return To:
Gateway Mortgage Group, LLC
244 South Gateway Place
Jenks, OKLAHOMA 74037-3448

This instrument was prepared by:
**Gateway Mortgage Group, LLC**
244 South Gateway Place
**Jenks, OKLAHOMA 74037-3448**
**877-406-8109**

Preparer: _____

NMLS# 7233 ; Originator: Dorothy Clavin, NMLS# 287224
Loan Number: **13111969**

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

**MIN: 100287715001087753**
**SIS Telephone #: (888) 679-MERS**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **November 21, 2016**, together with all Riders to this document.

**(B) "Borrower"** is **Ruth T McLean an unmarried woman**. Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is Gateway Mortgage Group, LLC, organized and existing under the laws of Oklahoma. Lender's address is 244 South Gateway Place, Jenks, OKLAHOMA 74037-3448.

**(E) "Note"** means the promissory note signed by Borrower and dated **November 21, 2016**. The Note states that Borrower owes Lender ONE HUNDRED SEVENTY THOUSAND AND NO/100 Dollars (U.S. **$170,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 1, 2046**.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

---

**NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**          Form 3031  1/01
Page 1 of 10

IDS, Inc. - 30229                                                     Borrower(s) Initials 

B16602 P0201

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☒ Planned Unit Development Rider ☐ VA Rider
☐ 1-4 Family Rider ☐ Biweekly Payment Rider
☐ Other [Specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the County of Middlesex:

**SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF.**

Property Account Number: 18-02501-0000-00143

which currently has the address of  143 Hampshire Dr
Plainsboro, NEW JERSEY 08536                                        ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and

---

**NEW JERSEY** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**                                   **Form 3031   1/01**
Page 2 of 10

IDS, Inc. - 30229                                                                                           Borrower(s) Initials _____

B16602 P0202

Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow

---

NEW JERSEY - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**                              Form 3031  1/01
Page 3 of 10

IDS, Inc. - 30223                                                                                          Borrower(s) Initials 

B16602 P0203

·Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

---

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS

Page 4 of 10

Form 3031   1/01

IDS, Inc. - 30229

Borrower(s) Initials 

B16602 P0204

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                                          Form 3031  1/01
Page 5 of 10

IDS, Inc. - 30229                                                                                                 Borrower(s) Initials _____

and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)** Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for mortgage Insurance, and they will not entitle Borrower to any refund.

**(b)** Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such

---

**NEW JERSEY** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**                    Form 3031  1/01
Page 6 of 10

IDS, Inc - 30229                                                                                        Borrower(s) Initials

Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced

---

**NEW JERSEY** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**                    **Form 3031  1/01**

Page 7 of 10

IDS, Inc - 30229                                                                              Borrower(s) Initials 



B16602 P0207

by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

---

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                           Form 3031  1/01
Page 8 of 10

IDS, Inc - 30229                                                                                          Borrower(s) Initials 

B16602 P0208

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

---

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS

Page 9 of 10

Form 3031  1/01

IDS, Inc. - 30229

Borrower(s) Initials 

B16602 P0209

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.



_____ (Seal)          _____ (Seal)
**Ruth T McLean**              -Borrower                                    -Borrower

STATE OF NEW JERSEY, SOMERSET _____ County ss:

On this 21st day of NOVEMBER, 2016, before me, the subscriber, personally appeared **Ruth T McLean** who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein expressed.

_____
Notary Public

Loan originator (organization): **Gateway Mortgage Group, LLC**; NMLS #: **7233**
Loan originator (individual): **Dorothy Clavin**; NMLS #: **287224**

---

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                     Form 3031  1/01
                                            Page 10 of 10

IDS, Inc. - 30229

B16602 P0210

NMLS# 7233 ; Originator: Dorothy Clavin, NMLS# 287224
Loan Number: 13111969

MIN: **100287715001087753**

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **21st day of November, 2016**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the Borrower") to secure Borrower's Note to **Gateway Mortgage Group, LLC** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**143 Hampshire Dr**
**Plainsboro, NEW JERSEY 08536**
(Property Address)

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

**Covenants, Conditions and Restrictions of Record**

(the "Declaration"). The Property is a part of a planned unit development known as

**HAMPSHIRE TOWNHOUSE**
(Name of Planned Unit Development)

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

---

**MULTISTATE PUD RIDER** – Single Family –
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3150 1/01

Page 1 of 3

IDS, Inc.

Borrower(s) Initials  _____

B16602  P0211

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire

---

**MULTISTATE PUD RIDER** - Single Family –
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3150 1/01

Page 2 of 3

IDS, Inc.

Borrower(s) Initials 

B16602  P0212

or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.



_____ (Seal)          _____ (Seal)
**Ruth T McLean**        -Borrower                                 -Borrower

---

MULTISTATE PUD RIDER - Single Family —                                    Form 3150 1/01
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                    Page 3 of 3
IDS, Inc.

B16602 P0213

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY
COMMITMENT FOR TITLE INSURANCE

SCHEDULE A
(Continued)

File No. **ORN6872**

LEGAL DESCRIPTION

ALL that certain lot, parcel or tract of land, situate and lying in the Township of Plainsboro, County of Middlesex, State of New Jersey, and being more particularly described as follows:

Beginning at a point located at the most southwesterly corner of Lot 143 as shown on a certain map entitled "Final Subdivision Plan of Hampshire Townhouse, Section 2B – Phase I for Linpro Plainsboro Multi-Family I, Inc." filed in the Middlesex County Clerk's/Register's office on 11/14/1986 as Map No. 974, said point being located the following three courses from the westerly line of the herein mentioned File map with the northerly line of Plainsboro Road;

(a)     Along the northerly line of Plainsboro Road, S. 82 degrees 34 minutes 44 seconds E. 21.11' to a point and thence,

(b)     N. 07 degrees 25 minutes 16 seconds E. 91.55' to a point and thence,

(c)     N. 08 degrees 20 minutes37 seconds W. 102.01' to the point or place of beginning and thence.

(1)     N. 08 degrees 20 minutes 37 seconds W. 22.01' to a point and thence,

(2)     N. 81 degrees 39 minutes 23 seconds E. 19.37' to a point and thence,

(3)     N. 08 degrees 20 minutes 37 seconds W. 2.58' to a point and thence,

(4)     N. 81 degrees 39 minutes 23 seconds E. 5.67' to a point and thence,

(5)     S. 08 degrees 20 minutes 37 seconds E. 2.58' to a point and thence,

(6)     N. 81 degrees 39 minutes 23 seconds E. 25.01' to a point and thence,

(7)     S. 08 degrees 20 minutes 37 seconds E. 17.50' to a point and thence,

(8)     N. 81 degrees 39 minutes 23 seconds E.4.67' to a point and thence,

(9)     S. 08 degrees 20 minutes 37 seconds E. 4.51' to a point and thence,

(10)    S. 81 degrees 39 minutes 23 seconds W., passing to, through and beyond a partition wall dividing the house herein described and the house on the south, 54.72' to the point or place of beginning.

The above description is in accordance with a survey prepared by Brunswick Surveying, Inc. dated 10/28/2016 as File No. 1690-16.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 143 in Block 2501 (f/k/a Block 10.03, Lot 143) on the Township of Plainsboro Tax Map.

ORT Form 4308 NJ
NJRB 3-07 Effective: 02/15/07 Revised: 09/10/07

ALTA Title Insurance Commitment Adopted 06/17/06

B16602 P0214

For Mortgage/Note collectors/Assignment (Servicer)
Under the Fair Debt Collection Practices Act.
Anti-Money laundering Act.

Notice By: Ruth T Mclean
 Postal location: P.O. Box 137, Plainsboro New Jersey 08536

Certified Mail: _____
9589 0710 5270 0683 8946 41

Name of Debt Collector: PNC BANK
Postal location: P.O OX 1820, Dayton Ohio 45401-1820

Date: September 20, 2023

Re: Request for information for PNC BANK Account 1000583850, Statement date 8/16/2023, as to the "Name and address for Creditor" for this alleged debt, Power of Attorney, Anti-Money Laundering Act.

§803 Definitions:
(1) The term "Bureau" means the Bureau of Consumer Financial Protection.
(3) The term "consumer" means any natural Person obligated or allegedly obligated to pay any debt.
4) The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another. 15USC 1692c et. Seq.

     Thus, for I, Ruth T Mclean, Under Declaration of Trust(u/d/t) circa ▬▬▬▬ born alive) , beneficiary, consumer,  representative for ( third Party STRAWMAN RUTH MCLEAN), fully competent, at majority age, ask these questions as per: FDCPA 15 USC 1692 – 1692p;
15 USC § 1692h §§ 809. Validation of debts, (a), (1), (2) the name of the creditor to
whom the debt is owed, (2), (3), (4), (5);
(b) Disputed debt. In writing within 30 days, for name and address of original creditor.
(e) Notice Provisions;

Fraud has no statute of limitations. The clock starts from the moment it was found out;

     Therefore, I am asking you: PNC BANK representative person making claim, for
the name of the creditor for this alleged debt.
In addition, I am asking you: PNC BANK representative person making claim, for the $170,000 money transfer transaction receipt of funds processed on my behalf for debt validation demands of said repayment as per BANKING SECRECY ACT/ ANTI-MONEY LAUNDERING ACT;
 15 U.S. Code § 78c - Definitions and application (37) The term "records" means accounts, correspondence, memorandums, tapes, discs, papers, books, and other documents or transcribed information of any type, whether expressed in ordinary or machine language.
     Further, I also ask for the "Evidence of Title" document issued to "Lender" and the Power of Attorney (POA), I knowingly granted to the Parties, to make any money transfer transactions on my behalf/interest?

Upon receipt of this correspondence, you have 30 days to satisfy the asking, or cease and desist all further actions.

See attached: PNC BANK statement dated 8/16/2023.

     By: *Ruth E Thompson McLean*, L.S.
     Nomem, Ruth T. Mclean, authorized representative, beneficiary, ARR UCC 1-308.

INDIVIDUAL ACKNOWLEDGEMENT

_____ State      SS.:      Middlesex _____ COUNTY

    The foregoing "Re: Request for information for PNC BANK Account 1000583850, Statement date 8/16/2023, as to the "Name and address for Creditor" for this alleged debt, Power of Attorney, Anti-Money Laundering Act.", instrument was acknowledged before me this _____ (date). by: RUTH E THOMSON who is personally known to me or who has produced _____ (appellation). NS Driver License as identification.

Affirmed and subscribed to before me,   )
This 2 day of Sep ,   )
                  )
A.D. 2023

Signature of Person Taking Acknowledgement..

ANITHA AMALRAJ
Printed [Name] of Person Taking Acknowledgment.

SEAL:   ANITHA AMALRAJ
NOTARY PUBLIC OF NEW JERSEY
ID # 2439666
My Commission Expires 10/16/2028

700 East Gate Drive, Suite 330
Mount Laurel, NJ 08054-0015
TEL 856.761.3400
FAX 856.761.1020
www.ballardspahr.com

William Reiley
Tel: 856.761.3465
Fax: 856.761.1020
ReileyW@ballardspahr.com

October 25, 2023

*By FedEx*

Ruth Esther Thompson McLean
143 Hampshire Drive
Plainsboro, NJ 08536

Re:   PNC Bank, N.A. v. McLean, et al.
      Docket No. F-003424-23

Dear Ms. McLean:

As you are aware, this firm represents plaintiff PNC Bank, N.A. ("PNC") in the above-referenced foreclosure action (the "Action"). PNC is in receipt of the letter sent by you dated September 20, 2023,[1] in which you requested specific information related to the mortgage loan (the "Loan") that is the subject of the above-mentioned foreclosure action ("Foreclosure Action"). Your letter invoked the Fair Debt Collection Practices Act ("FDCPA") and requested a response in accordance with its provisions.

Please note that PNC is acting on its own behalf in collecting the debt associated with the Loan that is the subject of the Foreclosure Action. As such, PNC is not legally obligated to respond to your FDCPA-based inquiry. However, for your convenience, we are including PNC's responses to your earlier letters dated April 26, 2023, and May 9, 2023, which provide details concerning the Loan.

Sincerely,

*William Reiley*

William Reiley

Enclosures

---

[1]   PNC received the September 20, 2023 letter on September 26, 2023.

A PA Limited Liability Partnership | Jeffrey S. Beenstock, Managing Partner

---

October 28, 2023
Brief By: McLean: width ∞
The above letter presentment by the alleged Plaintiff is evidence witness that they are in contact with me, I am [alive], the property not abandon. Evidence of fraud upon the court showing they are third-party debt collectors. They in violation of the FDCPA 1692 et seq. for failure to disclose that they are debt collectors and this is an attempt to collect a debt. Meaning an unlawful adverse attempt. They fail to provide the name and creditor authorization to collect claim debt. Fail to provide agency debt collections SIC & NAICS license. Thus they are not the creditor and I have no debt obligation.

*143 HAMPSHIRE DR*
*PLAINSBORO, NEW JERSEY*

Date: *10/19/2023*

Via Regular and Certified Mail, Return Receipt Requested #_____

9589 0710 5270 0683 8946 7250

_____
_____
_____

RE:     **TRUTH IN LENDING ACT RESCISSION NOTICE**
        NAME: *Ruth T. McLean*
        ADDRESS: *143 Hampshire Drive*
        ACCOUNT NO.: *1000583850*

To Whom It May Concern:

    I am writing to you about the above-referenced loan transaction, which I entered into with *Gateway Mortgage* on or about *11/21/2016*. Please be advised that I hereby rescind the transaction pursuant to the Federal Truth in Lending Act, 15 U.S.C. § 1635, Regulation Z § 226.23. I am entitled to rescind the loan because required material disclosures were not provided or were provided incorrectly.

    If you are the servicer of the loan or another agent of the holder, please forward this notice to the holder of the note and mortgage. Please let me know right away if you are neither the holder nor the servicer.

    The security interest granted as part of this transaction is void upon your receipt of this letter by operation of law. *See* 15 U.S.C. § 1635, Regulation Z § 226.23. Pursuant to the Regulation, the holder of the security interest has 20 days after receipt of this notice of rescission to return to me all monies paid and to take action necessary or appropriate to reflect termination of the security interest. Please be advised that if the security interest is not canceled and if all the consideration I paid is not returned to me as required by law, I will have no choice but to seek actual and statutory damages pursuant to 15 U.S.C. § 1640(a).

    Kindly notify me in writing that the security interest has been canceled, and that the consideration paid will be returned immediately. Thank you for your attention and cooperation.

Very truly yours,

*Ruth Esther Thompson McLean*
*All Rights Reserved*
*UCC 1-308*

Copyright 2009 Legal Services of New Jersey

**cfpb** Consumer Financial
Protection Bureau

(https://www.consumerfinance.gov/)

Submit a complaint  / Complaint filed

# Your complaint

## Complaint Number 230829-11880012

## Step 1

### What product or service is your complaint about?

**PRODUCT OR SERVICE**

Debt collection

**TYPE**

Mortgage debt

## Step 2

### What type of problem are you having?

**ISSUE**

Took or threatened to take negative or legal action

**HAVE YOU ALREADY TRIED TO FIX THIS PROBLEM WITH THE COMPANY?**

Yes

**DID YOU REQUEST INFORMATION FROM THE COMPANY?**

No

**TYPE OF ISSUE**

Consumer Financial Protection Bureau

Investigation Case: 230815-11773120 and 230829-11880012

Date: 10/27/2023

RE: Debt Validation, William Reiley third party debt collectors

(A).     I am disputing the alleged $170,000 debt claim by Reiley because he identified himself as a third-party debt collections servicer in his FDCPA response (unsigned) letter dated October 25, 2023, states he's acting on "behalf" of PNC as a "**debt collector**" assigned to collect a debt. Meaning not the "Creditor".

(B). Thus, there is no debt owed to Reiley since they are not the creditors and evidence in violation of the FDCPA to provide the name and address of the creditor.  Thus, I am again for the third time demanding debt validation under the FDCPA 15 U.S.C. 1692 et seq. for disclosure:

1.  Provide the name and address of the "Creditor".
2.  Provide NAICS Debt Collections license.
3.  Provide written verification in the form of a signed, sworn and Notarized Affidavit Power of Attorney (POA) from the "Creditor" that you are authorized to act on their behalf in this alleged debt collection action.
4.  A notarized copy of the Bond on file with the State of New Jersey allowing your firm to operate as a collection agency.
5.  Provide the statutes and enforcing regulations, both Federal and State, which clearly and unequivocally make me liable for this alleged debt and allow for the collection of this alleged debt.

(C) No evidence of debt,  The  original "Gateway Mortgage" Bank/Servicer waived their status as a "Creditor" when on 11/21/2016 they "Accepted" my remittance "Note" payment for the property and Mortgage  as tender of payment under UCC §3-409(a)&(b) deems they [cashed the draft/cheque Order paper] and UCC §3-604(a) means [they didn't return "Note" back to me  identifies it was valid].

In conclusion, for in the ordinary course of business, when good faith requires an answer, it is the duty of the party receiving a letter from another to answer within a reasonable time. Otherwise, he/she is presumed to admit the propriety of the acts mentioned in the letter of his/her correspondent and to adopt them. Clean hands doctrine, I am requesting disclosure records. Otherwise cease and desist, refund funds unlawfully collected, withdraw unlawful legal actions.

By The People_Full-Faith-and-Credit: RTM, Creditor u/d/t ∞

AFFIDAVIT OF TRUTH OF DISHONER.
NOTICE OF DEFAULT AND CLAIM OF DEMAND.
By: Special Appearance Only.

Date: Feburary 21, 2023.                                  7022 2410 0000 5318 7848

NOTICE TO AGENT IS NOTICE TO PRINCIPAL AND NOTICE TO PRINCIPAL IS NOTICE TO AGENT.

———————————————————————©

To PNC BANK N.A. Respondent(s):Real Party of Interest, Trustee: c/o Willian-S: Demckak
300 5th Avenue, Pittsburg, PA 15222-2401.

**From the desk of:** ▬▬▬▬▬▬▬▬▬▬▬▬▬.

Affiant(s) Authorized Representative(s):▬▬▬▬▬▬▬ ©.

Re: PNC BANK N.A. presumed [Loan] number ▬▬▬3850 aka Gateway presumed [Loan] number
▬▬1969.

For this being the third and FINAL DEFAULT NOTICE to provide PNC BANK N.A. Delegation of Authority. I
am unable to locate a contract with both I and a PNC/GATEWAY Bank agent's wet-ink signature nor the
original promissory NOTE and Mortgage.  For the Federal Rule of Civil Procedure 12(b)(6) Failure to State
a Claim, to date you and your and agents fail to state a claim upon which relief can be granted;

For now, this is a NOTICE AND DEMAND with Conditional Acceptance for you to cease and desist and
move matter into arbitration per (9 USC section 1) for Rights to Federal Arbitration. And Provide the
Certified Delegation of Authority under penalty of perjury showing you are the holder in due course of
"Loan":

1   Provide the original promissory **NOTE** and Mortgage with both  wet-ink signatures showing bank agent's
    representative and the obligation;
2   Provide proof of payment accounting ledger for tax records of presume [Loan] distribution;
3   Provide the total amount of funds you received by me; and return the attached 1099NEC with the total
    amount I paid to-date including your address and federal **TAX ID(EIN)**;
4   Provide answer to question: Was said "Loan" a HUD Federal loan, Yes or No.
5   Provide answer to question: Did your PNC Bank incur a liability with funds distribution, Yes or No.
6   Provide an **Invoice** signed by an agent for liability not a **Statement** receipt;
7   Provide your Federal and New Jersey **Tax ID(EIN)** for out of State demand for payment obligation by
    PNC from: PNC BANK P.O. BOX 1820, Dayton, OH 45401-1820;PNC BANK 8807 Dayton OH 45401-8807;
    PNC BANK NATIONAL ASSOCIATION  3232 Newmark Drive, Miamisburg, OH 45342; FREDDIE MAC 8200
    Jones Branch Dr. Mclean VA 22102;PNC BANK 300 5TH AVE, Pittsburg PA 15222-2401;
    8   NOTE "RUTH T MCLEAN" all caps spelling is not my appellation is not me.  Provide your demands
        for presumed money obligation threats and all further correspondences with the proper spelling of
        the appellation including the signature and seal of an authorized representative. I will return all
        your correspondences for you to provide the attach wet-ink signature and Tax ID of an agent and
        business demanding money obligation;
    9   Provide your copy of notice of foreclosure sent to the Secretary of Housing and Urban
        Development (HUD) per  24 CFR24 CFR § 203.356 - Notice of foreclosure and pre-foreclosure sale;
        reasonable diligence requirements;

NOTICE OF INTENT

For, to date Respondent(s) non- response shows unable to provide evidence of authority. Thereof,
Failure to respond to this notice within 10 days of receipt of this notice is admissible admission for said
previous failures. For Respondent(s) provided no admissible Authority to demand obligation, thereof
leading to conclusion of possible engagement Tax evasion, Mail Fraud and Securities fraud,  Unfair or
Deceptive Business Practices: Federal Trade Commission Section 5., The Hobbs Act. **This is a Demand to**

Page | 1 of 2

# USPS Tracking®

FAQs >

Tracking Number:                                                    Remove ✕

**70222410000053187848**

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

**Latest Update**

Your item has been delivered to an agent for final delivery in PITTSBURGH, PA 15222 on February 25,
2023 at 8:44 am.

Get More Out of USPS Tracking:
    USPS Tracking Plus®

**Delivered to Agent**
**Delivered to Agent for Final Delivery**
PITTSBURGH, PA 15222
February 25, 2023, 8:44 am

See All Tracking History

**Text & Email Updates**

**USPS Tracking Plus®**

**Product Information**

Track Another Package

Enter tracking or barcode numbers



## Previous System History - All Transactions Transactions

433 - PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION

Loan Number: 1000583850

Borrower Name: MCLEAN,RUTH T

| | | |
|---|---|---|
| Transaction Date | 05/05/2017 | 05/05/2017 |
| Sequence Number | 2 | 1 |
| Segment Number | | |
| Due Date | 06/01/2017 | 06/01/2017 |
| Transaction Type/Code | 1   73 | 1   73 |
| HI Type | 1 | 1 |
| Transaction Amount | $387.64 | -$387.65 |
| Principal Paid Amt. | $264.93 | $0.00 |
| Principal Balance | $165,683.22 | $0.00 |
| Interest Paid | $510.36 | $0.00 |
| Escrow Paid | $0.00 | $0.00 |
| Escrow Balance | $0.00 | $0.00 |
| A&H Insurance | $0.00 | $0.00 |
| Life Insurance | $0.00 | $0.00 |
| Restricted Escrow Amt. | $0.00 | $0.00 |
| Replacement Reserve Amt. | $0.00 | $0.00 |
| Fee Code | | |
| Fee Amount | $0.00 | $0.00 |
| Fee Description | | |
| Fee Reason Code | | |
| Misc. Paid Reason Code | | |
| Miscellaneous Paid | $0.00 | $0.00 |
| Suspense Amount | -$387.65 | -$387.65 |
| Suspense Balance | $0.00 | -$387.65 |
| Suspense Description | ACQUISITION & TR | ACQUISITION & TR |
| HUD Amount | $0.00 | $0.00 |
| HUD Fee Amount | $0.00 | $0.00 |
| Mort Rec. Corp. Adv. Amt. | $0.00 | $0.00 |
| 3rd Party Rec. Corp. Adv. Amt. | $0.00 | $0.00 |
| Esc. or Corp. Adv. Disb. Payee | | |
| Payee Description | | |
| Check Number | | |
| Current Payment Due | | |
| Corporate Adv. Tran. Desc. | $0.00 | $0.00 |
| Corporate Adv. Payee Code | | |
| Corporate Adv. Tran. Reason | | |
| Nonrecoverable Corp. Adv. Amt. | | |
| Effective Date | 05/05/2017 | 05/05/2017 |
| Prior Due Date | $0.00 | $0.00 |
| Credit Card Description 1 | | |
| Credit Card Description 2 | | |

Consideration
Payments to Gateway

**Current History (01/01/2020 - 12/31/2020) - All Transactions Transactions**

433 - PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION

Borrower Name: MCLEAN,RUTH T

Loan Number: 1000583850

| Transaction Applied Date | 05/07/2020 |
|---|---|
| Segment Number | 06/01/2020 |
| Due Date | 1  72 |
| Transaction Type/Code | |
| Amount | $775.28 |
| Principal Paid | $300.73 |
| Principal Balance | $156,794.89 |
| Interest Paid | $474.56 |
| Escrow Paid | $0.00 |
| Escrow Balance | $0.00 |
| A & H Insurance | $0.00 |
| Life Insurance | $0.00 |
| Late Charge Fee Code | |
| Late Charge Amt. | $0.00 |
| Miscellaneous Paid | $0.00 |
| Advance Balance | $0.00 |
| Suspense Balance | $0.00 |
| Payee Code | |
| Restricted Escrow | |
| BSC Amt. | $0.00 |
| FHA Payment Amt. | $0.00 |
| Refund Amt. | $0.00 |
| Replace Reserve | $0.00 |
| HUD Payment | $0.00 |
| HUD Fee Amt. | $0.00 |
| Reapplied Fee Amt. | $0.00 |
| Change Owner Fee | $0.00 |
| Capitalization Amt. | $0.00 |
| DIB/Old Interest Rate | |
| New Interest Rate | W-U MTCN: |
| Old P & I Amt. | |
| New P & I Amt. | |
| Old Due Date | |
| Unearned Interest Amt. | $0.00 |
| Unearned Interest Bal. | $0.00 |
| Credit Life Amt. | $0.00 |
| Origination Fee Amt. | $0.00 |
| Effective Date | 05/06/2020 |
| FS Principal Amt. | |
| FS Interest Amt. | |
| Interest Due Amt. | $0.00 |
| IOE/IORE Amt. | $0.00 |

*[Handwritten annotation: Consideration Payments to PNC Bank]*

10:42

143 Hampshire Dr, Plai...
zillow.com

Zillow App
☆☆☆☆☆

Open App



1 of 5

3 bd · 3 ba · 1,844 sqft

143 Hampshire Dr, Plainsboro, NJ 08536

○ **Off market**

Zestimate®: **$532,500**   Rent Zestimate®: **$3,499**

Est. refi payment: $4,305/mo   $  **Refinance your loan**



**My Home**
by FreddieMac®
(https://myhome.freddiemac.com/)

SEARCH 🔍        MENU ☰

# Yes. Our records show that Freddie Mac owns your mortgage.

————

**Address Line** : 143 HAMPSHIRE DR

**Borrower Name** : MCLEAN, RUTH T

**Servicer Name** : PNC BANK, NA

## What to Do Next

Please reach out to your loan servicer, the company where you send your mortgage payments, to discuss options that may be available to you. Their telephone number and mailing address should be listed on your monthly statement.

To have a productive conversation with your loan servicer, consider having a short description of your financial hardship ready (if applicable).

**If you are experiencing financial hardship directly or indirectly related to Coronavirus (COVID-19), mortgage relief options (https://myhome.freddiemac.com/getting-help/relief-for-homeowners)** are available.

Visit My Home by Freddie Mac® (https://myhome.freddiemac.com/) for information and guidance on options to stay in your home, options to leave your home, working with a housing counselor and how you can attain successful homeownership.