**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

RUTH T. MCLEAN,

    Plaintiff,

    v.

AIMEE D. SUMITRA, et al.,

    Defendants.

</td><td>

Civil Action No. 23-22842 (RK) (JBD)

**OPINION**

</td></tr>
</table>

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon a number of motions filed by both Plaintiff

Ruth T. McLean, ("Plaintiff"), and Defendants[1] in this action. Plaintiff has filed two Motions to

Amend the Complaint, (ECF Nos. 22, 40), a Motion for Sanctions, (ECF No. 51), and an Order to

Show Cause for Preliminary Injunction and Temporary Restraining Order, (ECF No. 54).[2] The

PNC Defendants have filed a Cross-Motion to Dismiss the Complaint. (ECF No. 15.)[3] The Ohio

Secretary of State has filed a Motion for Judgment on the Pleadings on Plaintiff's Initial Complaint,

---

[1] Defendants in this matter are PNC Bank, N.A. ("PNC Bank"), Aimee D. Sumitra (d/b/a PNC Bank), Thomas W. Morris (d/b/a PNC Bank) (together with PNC Bank and Aimee D. Sumitra, the "PNC Defendants"), the Ohio Secretary of State, the Pennsylvania Secretary of the Commonwealth, and the Delaware Secretary of State (together with the Ohio Secretary of State and Pennsylvania Secretary of the Commonwealth, the "Secretary of State Defendants"). (*See* "I.C.," ECF No. 1, at *3–4.) The Operative Complaint additionally names as Defendants "John and Jane Does 1-5" (the "Unnamed Defendants"). (*See* "O.C.," ECF No. 47, at 1.)

[2] The PNC Defendants opposed the First and Second Motions to Amend, (ECF Nos. 24, 46), as well as the Motion for Sanctions, (ECF No. 52). As Plaintiff's Order to Show Cause for Preliminary Injunction and Temporary Restraining Order was filed on September 20, 2024, Defendants' deadline to file any opposition has not yet expired. Because Plaintiff's motion is patently frivolous, the Court need not wait for an opposition, and Defendants need not expend additional time and resources to address same.

[3] Plaintiff filed an Opposition to the PNC Defendants' Cross-Motion to Dismiss. (*See* ECF No. 20.) The PNC Defendants replied to Plaintiff's Opposition. (*See* ECF No. 25.)

(ECF No. 29), and a Motion to Dismiss Plaintiff's unauthorized Operative Complaint, (ECF No. 48). The Court has considered the parties' submissions and resolves the pending motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.

For the reasons set forth below, the PNC Defendants' Cross-Motion to Dismiss the Complaint, and the Ohio Secretary of State's Motion to Dismiss the Operative Complaint, are GRANTED. (ECF Nos. 15, 48.) Plaintiff's Operative Complaint is DISMISSED without prejudice as to all Defendants. (ECF No. 47.) Plaintiff's Motions to Amend and the Ohio Secretary of State's Motion for Judgment on the Pleadings are DENIED as moot. (ECF Nos. 22, 29, 40.) Plaintiff's Order to Show Cause for Preliminary Injunction and Temporary Restraining Order and Motion for Sanctions are both DENIED. (ECF Nos. 51, 54.)

## I.    **<u>BACKGROUND</u>**[4]

This matter arises out of a New Jersey state foreclosure action brought by Defendant PNC Bank against Plaintiff in the Superior Court of New Jersey for Middlesex County, Chancery Division (the "Foreclosure Action").[5] (I.C. at *6; ECF No. 15-2 at Ex. A.) The exact nature of the alleged wrongdoing in this federal action brought by Plaintiff is not clear, but it seems to involve a property located in Plainsboro, New Jersey, (I.C. at *6), a "[m]ortgage claim of $170,000 advance," (*id.*), PNC Bank's supposed "filing of frivolous lawsuit" around March 2023, (*id.*), and

---

[4] Pin-cites preceded by an asterisk refer to the page numbers in the CM/ECF header.

[5] The record's most recent update in the Foreclosure Action—filed by the PNC Defendants—is a January 12, 2024 Order from the Honorable Lisa M. Vignuolo, P.J.Ch. granting PNC Bank's Motion for Summary Judgment and dismissing Plaintiff's "affirmative defenses and quiet title claim." ("Foreclosure Action MSJ Order," ECF No. 15-2 at Ex. A.) Judge Vignuolo ordered the matter "returned to the Office of Foreclosure as uncontested." (*Id.*) Plaintiff also filed a number of documents from the Foreclosure Action suggesting Plaintiff failed to participate in the Foreclosure Action and did not contest the result entered there. (*See* I.C. at *10–23.)

"PNC debt collector/servicer- unauthorized to foreclose," (*id.* at *7). What is clear, however, is Plaintiff's unrelenting filings assert a series of causes of action that have no applicability to Plaintiff's apparent attempt to prevent a state Foreclosure Action on what the Court presumes is her property.  The Court notes that as a byproduct of Plaintiff's serial filings, including repeated motions to attempt to amend her Initial Complaint, the Court has been inundated with pleadings and other filings[6] that all have diverging claims and allegations, but at bottom seek to do the same thing—forestall the Foreclosure Action. The Court will set forth a brief summary of Plaintiff's filings for purposes of clarity:

- On November 30, 2023, Plaintiff filed her initial Complaint ("Initial Complaint"). ("I.C.," ECF No. 1.)

- On January 19, 2024, Plaintiff filed her first Motion for Injunction and Permanent Restraining Order. ("First TRO Mot.," ECF No. 6.)

- Less than a month later, on February 5, 2024, Plaintiff filed another Motion for Injunction and Permanent Restraining Order. ("Second TRO Mot.," ECF No. 11.)

- Three weeks later, on February 26, 2024, Plaintiff filed another Motion for Temporary Restraining Order. ("Third TRO Mot.," ECF No. 17.)

- On March 12, 2024, Plaintiff filed her first Motion for Leave to File an Amended Complaint. ("First Mot. to Amend," ECF No. 22.)

---

[6] For example, Plaintiff filed two documents entitled "Notice, Consent, and Reference of a Civil Action to a Magistrate Judge" on March 25, 2024 and April 22, 2024. (ECF Nos. 23, 30.) It is unclear why Plaintiff filed either of these documents—particularly because this matter was *not* referred to a magistrate judge to conduct all proceedings and order the entry of final judgment—and neither filing was with the consent of any Defendants in this matter. Therefore, the Court does not address these two filings any further.

- On April 9, 2024, Plaintiff filed a "Brief in Support of a Motion for Motion to Leave to Amendment the Complaint and Motion for Arbitration" that appears only to be a draft proposed order without any briefing attached. (ECF No. 28.)

- On June 5, 2024, Plaintiff filed a second Motion to Amend the Complaint and Motion for Arbitration. ("Second Mot. to Amend," ECF No. 40.)

- On July 8, 2024, Plaintiff unilaterally filed an Amended Complaint. For the reasons discussed below, the Court considers this to be the "Operative Complaint" ("OC") in this matter. ("O.C.," ECF No. 47.)

- On August 21, 2024, Plaintiff filed a "Writ of Removal." (ECF No. 49.)

- On September 3, 2024, Plaintiff filed a Motion for Sanctions. ("Mot. for Sanctions," ECF No. 51.)

- On September 20, 2024, Plaintiff filed a fourth "Proposed Order to Show Cause for Preliminary Injunction and Temporary Restraining Order to Enter Contempt." ("Fourth TRO Mot.," ECF No. 54.)

The Court is now left with the Mount Everest-like task of trying to decipher Plaintiff's avalanche of filings to discern her operative set of claims and allegations that form the bases of her requests for relief. Toward that end, the Court will endeavor to do its best.

Plaintiff's 22-page Initial Complaint is directed at the PNC Defendants and the Secretary of State Defendants. (*See* I.C.) The allegations and claims are difficult to discern. For example, the Initial Complaint states that Plaintiff brings this action under the "Fair Housing Act section 837, section 245, 701, National Currency Act section et seq. 4th Amendment, Preamble to Constitution-Life, Liberty and pursuit of Happines [sic]; Article for contracts." (*Id.* at *5.) Two pages later, Plaintiff describes the relief sought as:

> Damages sought for all the above factual claims possess actual prior court awarded damages: Coloring Title: Unlawful Note Negotiable Instrument Conversion: Consumer Fraud: Injunction against the State Court, MIDDLESEX COUNTY SUPERIOR COURT, CHANCERY DIVISION, SWF-F-003424-23, venue has no jurisdiction based on the contract. may cause harm under Rooker-Feldman Doctrine.

(*Id.* at *7.) Plaintiff attached 46 pages of exhibits to the Initial Complaint that appear to include Plaintiff's mortgage, (*see* ECF No. 1-1 at *22–31), a loan note, (*see id.* at *10–12), and correspondence with PNC Bank regarding the Foreclosure Action, (*see id.* at *37).

On January 19, 2024, a week after the Foreclosure Action MSJ Order, Plaintiff filed her First TRO Motion in this federal case seeking to enjoin the Foreclosure Action. ("First TRO Mot.," ECF No. 6.) This Court denied the First TRO Motion in short order. (*See* ECF No. 9.) Four days later, Plaintiff filed her Second TRO Motion that was just the as-filed First TRO Motion with the old dates crossed out. ("Second TRO Mot.," ECF No. 11.) At that time, the PNC Defendants filed an Opposition to the Second TRO Motion and a Cross-Motion to Dismiss the Complaint. ("PNC's Cross-Motion to Dismiss," ECF No. 15-1.)

While the Court considered the Second TRO Motion, Plaintiff filed her Third TRO Motion, yet again asking the Court to "intercede to stay the[] State Court actions." ("Third TRO Mot.," ECF No. 17 at 1.) The Court denied both the Second TRO Motion and Third TRO Motion and ordered Plaintiff to "not file any motion for preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65 without first seeking leave of Court by filing a two-page letter explaining the basis for her motion." (ECF No. 19 at 6.)

On March 12, 2024, Plaintiff filed an Opposition to PNC's Cross-Motion to Dismiss, (ECF No. 20), and her First Motion to Amend, ("First Mot. to Amend," ECF No. 22).[7] Plaintiff sought

---

[7] The PNC Defendants replied to Plaintiff's Opposition, (ECF No. 25), and further opposed the First Motion to Amend, (ECF No. 24).

to file an amended complaint that would add Gateway First Bank and "Freddie Mac" as Defendants and add additional claims, including claims under the 1866 Civil Rights Act, "Preemption Clause," and "Four Corners Rule." (*Id.*) The Court (or the Magistrate Judge)—having been inundated by Plaintiff's filings—did not have the opportunity to rule on Plaintiff's First Motion to Amend, which left the Initial Complaint as the operative pleading at the time. The following month, the Ohio Secretary of State filed a Motion for Judgment on the Pleadings.[8] ("Ohio's Motion for Judgment on the Pleadings," ECF No. 29.)

Without waiting for the Court to decide the First Motion to Amend, Plaintiff filed another "Motion to Amend Complaint and Motion for Arbitration" on June 5, 2024.[9] ("Second Mot. to Amend," ECF No. 40.) While the Second Motion to Amend is similarly difficult to interpret, it appears Plaintiff sought to add additional claims for, among other things, defamation, "identity thief [sic]," and "violation of consumer protection laws."[10] (*Id.* at 1–2.) The Court (or the Magistrate Judge) again did not have the opportunity to rule on Plaintiff's Second Motion to Amend, which left the Initial Complaint as the operative pleading.

Then, on July 8, 2024, Plaintiff unilaterally filed the OC without the requisite leave of Court. ("O.C.," ECF No. 47.) The OC—Plaintiff's third iteration of an amended pleading which is entirely different from the proposed amendments in her First and Second Motions to Amend—removed the Secretary of State Defendants as Defendants in this action and added the Unnamed Defendants. (*Id.* at 1.) The OC alleges four counts of wrongdoing against the PNC Defendants and

---

[8] Because Plaintiff's First Motion to Amend had not yet been decided, and the proposed amended complaint had not been accepted for filing, Ohio's Motion for Judgment on the Pleadings was directed to the Initial Complaint. However, Ohio's brief noted that the proposed amendment in the First Motion to Amend did not "cure any of the deficiencies discussed" in their Motion. (ECF No. 29-1 at 3 n.1.)

[9] There does not appear to be a reference to arbitration anywhere in the Second Motion to Amend.

[10] The PNC Defendants opposed the Second Motion to Amend. (*See* ECF No. 46.)

the Unnamed Defendants: violation of the Fair Debt Collection Practices Act ("FDCPA") (Count I); violation of the New Jersey Fair Credit Reporting Act ("NJFCRA") (Count II); fraud (Count III); and civil conspiracy (Count IV). (*Id.* at 4–5.) The Ohio Secretary of State subsequently filed a Motion to Dismiss the Operative Complaint. ("Ohio's Motion to Dismiss," ECF No. 48.)

Since then, Plaintiff has made a handful of other filings adding various allegations and seeking new forms of relief. Plaintiff filed a 12-page "Writ of Removal," which appears to be seeking the same relief Plaintiff has consistently been denied by the Court—a stay of the state Foreclosure Action. (*See* ECF No. 49 at 1.) Plaintiff also filed the pending Motion for Sanctions directed at Defendant PNC Bank and its counsel.[11] ("Motion for Sanctions," ECF No. 51.) Further, a subsequent letter from Plaintiff requested the Court to subpoena documents from the PNC Defendants in relation to Plaintiff's Motion for Sanctions. (ECF No. 53.) Plaintiff then filed another Order to Show Cause for Preliminary Injunction and Temporary Restraining Order, ("Fourth TRO Motion"), yet again seeking to enjoin the Foreclosure Action. (ECF No. 54.)

## II.    LEGAL STANDARD

### i.    Federal Rule of Civil Procedure 15

Rule 15 permits a party to amend its pleading once as a matter of course within 21 days of service or 21 days after service of a responsive pleading or service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Otherwise, a party can only amend "with the opposing party's written consent or the court's leave." Fed. R. Civ. P 15(a)(2). A motion for leave to amend a complaint is "addressed to the sound discretion of the district court." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001). A district court "may deny leave to amend a complaint if a plaintiff's delay in seeking amendment is undue, motivated by bad faith,

---

[11] The PNC Defendants opposed Plaintiff's Motion for Sanctions. (*See* ECF No. 52.)

or prejudicial to the opposing party." *Id.* at 273. A district court may also deny leave to amend where "the movant fails to provide a draft amended complaint," or the amendment "fails to state a cause of action." *Id.*

### ii.    Federal Rule of Civil Procedure 12(b)(6)

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, allegations that are "no more than conclusions" may be disregarded. *Id.* at 679. Restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The court accepts allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

On a motion to dismiss, a court must only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court is also permitted to take "judicial notice of [] state court proceedings . . ." *In re Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005) (noting "judicial notice can be taken of certain facts such as that a document was filed, a position taken, an admission or allegation made 'as long as it is not unfair to a party to do so and does not undermine the trial court's

factfinding authority.'" (quoting *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995))).

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 8's purpose is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While under Rule 8(a) plaintiffs are not required to set forth detailed factual allegations in their complaints, they have an "obligation to provide the 'grounds' of [their] 'entitle[ment] to relief' . . . ." *Id.*

### iii.    Federal Rule of Civil Procedure 65

Granting a temporary restraining order pursuant to Rule 65 is an "extraordinary remedy" that "should be granted only in limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). In determining whether to grant a motion for preliminary injunctive relief, the Court considers four factors: (1) whether the movant has shown "a reasonable probability of eventual success in the litigation"; (2) whether the movant "will be irreparably injured . . . if relief is not granted"; (3) "the possibility of harm to other interested persons from the grant or denial of the injunction"; and (4) whether granting the preliminary relief will be in "the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (citing *Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)). The movant bears the burden of showing its entitlement to an injunction. *See Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)).

### III.    Federal Rule of Civil Procedure 11

Pursuant to Rule 11, a court may impose sanctions on attorneys and parties. Rule 11 requires that any "pleading, written motion, or other paper" filed or submitted to the Court "not be[] presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). The goal of Rule 11 is accountability, *Keister v. PPL Corp.*, 677 F. App'x. 63, 68 (3d Cir. 2017), and its central purpose is to deter baseless filings, *Howe v. Litwark*, 579 F. App'x. 110, 115 (3d Cir. 2014) (quoting *Cooter & Geil v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). To secure Rule 11 sanctions, a party must make a motion for sanctions "separately from any other motion and must describe the specific conduct that allegedly violates [Rule 11]." Fed. R. Civ. P. 11(c)(2). Any sanction imposed must be limited to what suffices to deter repetition of the conduct or comparable conduct. Fed. R. Civ. P. 11(c)(4). In addition, notice to the alleged offender is required. *See* Fed. R. Civ. P. 11(c)(1).

### IV.    <u>DISCUSSION</u>

Given the number of motions currently before the Court, the Court will address the motions in the following order: (i) Plaintiff's First and Second Motions to Amend; (ii) Ohio's Motion for Judgment on the Pleadings, Ohio's Motion to Dismiss, and PNC's Cross-Motion to Dismiss, (iii) Plaintiff's Fourth TRO Motion; and (iv) Plaintiff's Motion for Sanctions.

#### i.    **Plaintiff's First and Second Motions to Amend the Complaint**

In order to adequately address Ohio's Motion to Dismiss and PNC's Cross-Motion to Dismiss, the Court begins by addressing Plaintiff's two outstanding Motions to Amend the Complaint. (*See* First Mot. to Amend; Second Mot. to Amend.) The proposed amendments in Plaintiff's Motions seek to add new allegations, new parties, and new claims, many of which are confusingly pled. (*See, e.g.*, First Mot. to Amend at *7 (seeking to bring a count referred to as

10

"Debt Peonage-Involuntary Servitude"); Second Mot. to Amend at *1 (seeking to add confusing allegations, such as "For on 11/21/2016, Breach of Note agreement contract new Second Note, shown on the second transaction, title transfer to Gateway/PNC., (Defendant) is a Purchase Money Loan Mortgage Indenture Securities lien on Plaintiff estate. . . .").)

The Court notes at the outset that Plaintiff improperly filed the OC, which was filed prior to the Court issuing a decision with respect to either of the proposed amendments in the First Motion to Amend and Second Motion to Amend. Over three months passed between Plaintiff filing her Initial Complaint, (ECF No. 1), and when she first sought to file an amended complaint, (ECF No. 22); further, *seven* months passed between Plaintiff filing the Initial Complaint, (ECF No. 1), and actually filing the OC, (ECF No. 47).[12] Therefore, Plaintiff was required to either obtain the consent of Defendants, or leave of Court, prior to filing the OC—neither of which occurred. *See* Fed. R. Civ. P. 15(a)(2).

The Court will consider the OC as Plaintiff's operative pleading. *See Floyd v. Commonwealth*, No. 16-1420, 2017 WL 3405320, at *1 (M.D. Pa. June 14, 2017), *report and recommendation adopted*, 2017 WL 3394183 (M.D. Pa. Aug. 8, 2017*), aff'd sub nom. Floyd v. Att'y Gen. of Pennsylvani*a, 722 F. App'x 112 (3d Cir. 2018) ("Because Floyd is proceeding *pro se*, we will consider his amended complaint even though it was not timely filed."). In consideration of Plaintiff's *pro se* status, the Court will also consider the allegations and claims in the Initial

---

[12] At the time Plaintiff filed the First Motion to Amend, she could have amended the Initial Complaint as a matter of course, as it was within 21 days of the filing of the PNC Defendants' Cross-Motion to Dismiss. *See* Fed. R. Civ. P. 15(a)(1)(B) (stating a party can amend its pleading once as a matter of course no later than "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.")  However, given that Plaintiff subsequently filed the Second Motion to Amend and the ultimate OC, the Court presumes that Plaintiff no longer seeks to rely on the proposed amendment in the First Motion to Amend, particularly given the extreme differences between the claims and allegations in that proposed amendment as compared to the OC.

Complaint to be incorporated into the OC, though the Court need not do so as a technical matter.[13] *See West Run Student Housing Assocs., LLC v. Huntington Nat'l Bank,* 712 F.3d 165, 171 (3d Cir. 2013) (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.,* 101 F.3d 1492, 1504 (3d Cir. 1996)) (An "amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'").

The Court recognizes that PNC's Cross-Motion to Dismiss is directed at Plaintiff's Initial Complaint, (*see generally*, PNC's Cross-Motion to Dismiss), and the PNC Defendants have not filed a renewed motion to dismiss since Plaintiff filed her OC. However, the Court has reviewed the PNC Defendants' Cross-Motion to Dismiss, as well as Plaintiff's OC. The arguments the PNC Defendants direct to the Initial Complaint apply with equal force to the claims and allegations raised in the OC. Therefore, the Court will consider PNC's Motion to Dismiss as applied to the OC (which, as discussed, incorporates the Initial Complaint). *See Brown v. Camden City School District,* No. 19-114, 2020 WL 6055070, at *4 (D.N.J. 2020) ("[A] defendant should not be 'required to file a new motion to dismiss simply because an amended pleading was introduced while its motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading.'" (quoting *Jordan v. City of Phila.,* 66 F. Supp. 2d 638, 640 n.1 (E.D. Pa. 1999))).

Because the Court has found the OC to be the operative pleading in this matter, the prior-filed First Motion to Amend and Second Motion to Amend are denied as moot.

---

[13] The Court gives Plaintiff the benefit of the doubt that the as-filed OC contains the operative set of claims and allegations she wishes to rely on going forward in this action, and therefore will not incorporate the previously but mooted proposed amendments in the First Motion to Amend and Second Motion to Amend into its analysis. However, a cursory review of both proposed amendments suggests both suffer from the same defects the OC suffers from that the Court discusses in this Opinion.

####          ii.      Motions to Dismiss and Motion for Judgment on the Pleadings

#####                    a.   *Colorado River* Abstention

The PNC Defendants argue in their Cross-Motion to Dismiss that the Court should abstain from entertaining this action altogether based on the *Colorado River* abstention doctrine. (PNC's Cross-Motion to Dismiss at 10.) *Colorado River* abstention "allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)). The threshold inquiry is "whether there is a parallel state proceeding that raises 'substantially identical claims [and] nearly identical allegations and issues.'" *Id.* (quoting *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005)).

The PNC Defendants argue that this action is substantially similar to the ongoing Foreclosure Action, (PNC's Cross-Motion to Dismiss at 13), and the Court notes it does appear both the Foreclosure Action and this action are connected to Defendant PNC Bank's foreclosure on Plaintiff's property. Indeed, "[t]his district has repeatedly invoked *Colorado River* to abstain from hearing what amount to collateral attacks on pending state foreclosure actions." *Perez v. JP Morgan Chase Bank, N.A.*, No. 14-2279, 2019 WL 3570868, at *2 (D.N.J. Apr. 22, 2019) (quoting *Dickerson v. Wells Fargo Bank*, No. 15-3747, 2016 WL 820989, at *3 (D.N.J. March 2, 2016)).

However, the Court cannot verify the current status of the Foreclosure Action. The Court's inquiry is hamstrung by the limited verifiable citations provided in any of Plaintiff's pleadings or the PNC Defendants' Cross-Motion to Dismiss. *See Farah v. Lasalle Bank Nat'l Ass'n*, No. 15-2602, 2016 WL 1162644, at *9 (D.N.J. Mar. 23, 2016) ("I find that I cannot apply the *Colorado River* factors without reference to facts that cannot be determined on this motion to dismiss.").

Further, while the Initial Complaint could be construed as asking the Court to enjoin the Foreclosure Action, the OC primarily seeks compensatory relief in connection with the PNC Defendants' debt-collection practices. (*See* O.C. at 6.) In a similar case, a court in this District held that a "state foreclosure action" that involved a bank defendant "seeking a judgment of foreclosure on property subject to a mortgage" was not parallel to a federal action "seek[ing] only damages for various debt collection practices but [did] not seek to invalidate the foreclosure proceeding." *DeHart v. U.S. Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1046 (D.N.J. 2011); *see also Dowell v. Bayview Loan Servs., LLC*, No. 16- 02026, 2017 WL 9486188, at *13 (M.D. Pa. May 4, 2017) ("In the foreclosure action, Wells Fargo and then Bayview sought an *in rem* judgment of foreclosure. In this action, Dowell is seeking damages in addition to injunctive relief. Given these differences in the parties and the remedies sought, we conclude that the actions are not parallel.").

Therefore, particularly given the rather circumscribed parameters of *Colorado River* abstention, and because the Court can otherwise dispose of this action on Rule 12(b)(6) grounds, at present, the Court need not find this action and the Foreclosure Action to be parallel. *See Allied Nut & Bolt, Inc. v. NSS Indus., Inc.*, 920 F. Supp. 626, 630 (E.D. Pa. 1996) ("The courts have been cautious in finding actions that are merely similar to be [parallel].").

### b.  1793 Anti-Injunction Act

To the extent the OC can be construed as seeking to enjoin the Foreclosure Action, the 1793 Anti-Injunction Act imposes "an absolute prohibition [] against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970). The Act's three narrowly-read exceptions apply only "when expressly authorized by statute, necessary in aid of the court's jurisdiction, or necessary to protect or effectuate the court's judgment." *Chick Kam*

*Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988). The Court finds that no exceptions apply here. *First*, no statute authorizes this Court to enjoin the state court proceedings. *Second*, the state proceedings do not "so interfer[e] with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 134 F.3d 133, 144 (3d Cir. 1998) (quoting *Atl. Coast Line R. Co.*, 398 U.S. at 295). *Third*, this Court has issued no order or judgment that could be threatened by the state proceedings. Therefore, the Court is prohibited from enjoining the Foreclosure Action.

### c. Failure to State a Claim

#### 1) Secretary of State Defendants

The Court finds that the OC (including the as-incorporated Initial Complaint) does not make any reference to the Ohio Secretary of State—or indeed, to any of the Secretary of State Defendants—beyond naming it as a Defendant in the Initial Complaint. None of the Secretary of State Defendants are named as a Defendant in the OC. (*See* O.C.) Therefore, the Ohio Secretary of State is dismissed from this action, and the Ohio Secretary of State's Motion to Dismiss the OC is granted. *See Palladino ex rel. U.S. v. VNA of S. New Jersey, Inc.*, 68 F. Supp. 2d 455, 477 (D.N.J. 1999) (finding claims "must be dismissed as" to defendant for which the complaint "contained no allegations"); *see also DeLauri v. New Jersey Div. of State Police*, No. 05-4165, 2009 WL 222983, at *1 n.2 (D.N.J. Jan. 27, 2009) ("Plaintiff makes no allegations against Defendants Bertrand and Peterson. Therefore, the Court dismisses these Defendants from this case."); *Jones v. Ellis*, No. 21-13625, 2021 WL 5015921, at *1 n.1 (D.N.J. Oct. 28, 2021) ("The Complaint also mentions Richard Hughes, but there are no allegations about this Defendant, and the Court will dismiss this Defendant for lack of personal involvement in the alleged wrongs."). Consequently, the Ohio

Secretary of State's Motion for Judgment on the Pleadings is denied as moot. (*See* Ohio's Motion for Judgment on the Pleadings.)

With respect to the remaining Secretary of State Defendants, the Court notes that neither Defendant has entered an appearance or sought dismissal in this matter, leaving the Court to question if either Defendant was properly served process. (*See* ECF Nos. 10-2, 10-5.) Nonetheless, because the OC does not name any of the Secretary of State Defendants, the Court liberally construes Plaintiff's OC to be seeking to dismiss the remaining Secretary of State Defendants from this action. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed. . . ." (internal citations omitted).) Under Federal Rule of Civil Procedure 41(a)(2), an action "may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Thus, Plaintiff's implied request to dismiss from this action the remaining Secretary of State Defendants—the Pennsylvania Secretary of the Commonwealth and the Delaware Secretary of State—is granted.[14]

### 2) PNC Defendants

The PNC Defendants argue that the OC "fails to plead sufficient facts to support any potential causes of action, and fails to demonstrate a plausible claim for relief." (PNC's Cross-Motion to Dismiss at 17.) Federal Rule of Civil Procedure 8's pleading standard "demands more

---

[14] In further support of the Court's finding that Plaintiff seeks to dismiss the Pennsylvania Secretary of the Commonwealth and the Delaware Secretary of State from this action, the Court notes that Plaintiff notates some version of "Process of Service" or "Service of Process" next to each of the Secretary of State Defendants' names in the Initial Complaint. (*See* I.C. at *3–4.) Plaintiff explained in her First Motion to Amend that she named the Ohio Secretary of State as a Defendant because "the Secretary of State for Ohio is proper process of service for a Ohio business . . ." (First Mot. to Amend at *3.) Plaintiff then asked the Court "to deny [the Ohio Secretary of State's] appearance request" in the matter. (*Id.* at *4.) It appears to the Court that Plaintiff named the Secretary of State Defendants under the mistaken belief that the Secretary of State Defendants were required to be named in order to serve process through them under Federal Rule of Civil Procedure 4(e)(2)(C). The Court's finding is amplified by the fact that Plaintiff removed the Secretary of State Defendants as named Defendants from the OC.

16

than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

The Court begins its analysis by looking at the OC's allegations. Beginning with the as-incorporated Initial Complaint, Plaintiff states that she brings her lawsuit under "Fair Housing Act section 837, section 245, 701, National Currency Act section et seq. 4th Amendment, Preamble to Constitution-Life, Liberty and pursuit of Happines [sic]; Article for contracts." (I.C. at *5.) None of these are cognizable claims. *First*, the "Preamble to Constitution" does not provide a cognizable private cause of action for Plaintiff to rely on. *Second*, the Court cannot discern what causes of action Plaintiff seeks to bring when she references an "Article for contracts." *Third*, Plaintiff cites sections of the Fair Housing Act that do not exist. *See* 42 U.S.C. §§ 3601–3619, 3631 (sections of the U.S. Code that make up the Fair Housing Act). *Fourth*, the Complaint alleges no facts to support a violation of the National Currency Act (which was replaced by the National Bank Act of 1864). *See Turner v. E. Sav. Bank, FSB*, No. 09-2637, 2010 WL 1409858, at *2 (D. Md. Apr. 2, 2010) ("The National Currency Act prohibited actions such as 'transfer of bank assets in contemplation of insolvency or with a view to preferring one creditor of the bank over another.' . . . There are no factual allegations in Plaintiffs' complaint that support a National Currency Act violation." (internal citations omitted)). *Finally*, to the extent Plaintiff's "4th Amendment" claim can be construed as a claim under 42 U.S.C. 1983, such a claim cannot be maintained against private entities and actors like the PNC Defendants. *See Boykin v. New Jersey*, No. 16-5543, 2017 WL 2560346, at *3 (D.N.J. June 12, 2017) (finding in foreclosure action that plaintiff could not "maintain claims under Section 1983 that essentially seek relief based on the private conduct of a private entity or actor, no matter how allegedly wrongful").

The Court also notes that the Initial Complaint fails to comport with Federal Rule of Civil Procedure 8's directive that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Initial Complaint is replete with confusing, erratic, and convoluted paragraphs that do not make clear to the Court, much less any Defendant, what claims Plaintiff is putting forth and what relief she seeks. To share a few examples, Plaintiff stated that the facts underlying her claim were:

> Fact: Property seized in demense [sic] as of fee by homeowner at 143Hampshire,County Notice of Settlement 10/26/2016 Bk#02381, Pg#0467 Gateway Mortgagee;Deed 11/9/2016, $340,500 payoff Bk06913, Pg#0064; This contract govern by Federal law; PNC debt collector/servicer- unauthorized to foreclose; Gateway President 'J. Keving Stitt' signature endorsement payee on 'Note', deems he received $170,000 advance, meaning he obligated to pay; property convey without consideration; 'Note' and Mortgage separated deems void per Carpenter v. Longan. Fact: Only Creditor can Foreclose, not the assign/servicer. 15 USC section 1692 et seq.

(I.C. at *7.) In requesting specific performance, Plaintiff wrote:

> Enforce litigants/Borrower's rights governing Federal jurisdiction under Section 16 because Defendant file foreclosure in NJ State venue seeking a judgment to circumvent the contract. Therefore Borrower Order: (1). An injunction to immediately cease State court venue litigation; (2).PNC provide authority holder the authenticated original 'Note,Mortgage' with notary name seal; (3). Use $170,000 'Note' funds paid to 'J. Kevin Stiff' signer/payee obligation to pay full amount owed section 8;(4). Terminate/discontinue contract after foreclosure initiated section 19 and 22; (5). Enforce section 11 Miscellaneous proceeds pay sums, return to Borrower unused for repairs.

(*Id.* at *20.) In explaining her damages, Plaintiff stated:

> For financial harm consideration payments I made; for conveying real property not knowing for home repairs mortgage lien; threaten right to housing; for identity theft the unauthorized check/draft processed without POA/consent/contract to attach allonge [sic] after closing to convert 'Note' into check/draft negotiable instrument to pay $170,000 advance to Gateway President with the words 'PAY TO THE ORDER OF: J. Kevin Stitt' payee endorser signature; for 'Note' deem asset payment separated from Mortgage debt given to FreddieMac; for third-party 'debt collector' PNC initiating adverse property and dispute in State not Federal venue per contract terms.

(*Id.*) These are but a few examples of Plaintiff's convoluted representations that are a common theme throughout many of her filings in this matter. (*See, e.g.*, ECF No. 20; Mot. for Sanctions.) "A complaint that reads like a plaintiff's personal 'diary' and is 'rambling and confusing' does not meet the standard under Rule 8(a)(2)." *Blount v. TD Bank, N.A.*, No. 12-18805, 2022 WL 4354640, at *2 (D.N.J. Sept. 20, 2022) (quoting *Pilkey v. Lappin*, No. 05-5314, 2006 WL 1797756, at *1 (D.N.J. June 26, 2006)); *see Teklewolde v. Onkyo USA Corp.*, No. 06-1097, 2006 WL 2465426, at *2 (D.N.J. Aug. 22, 2006) ("[A] court should dismiss the case pursuant to Rule 8(a), 'if a *pro se* complaint is so confusing or unintelligible that no party could possibly understand or reply to it.'" (quoting *Cole v. Commonwealth Federal,* No. 94-6099, 1994 WL 618464, at *1 (E.D. Pa. Nov. 8, 1994))).

Where the Initial Complaint provides an overload of jumbled detail, the now OC provides the opposite. A review of the OC reveals that almost the entirety of Plaintiff's 27-paragraph pleading is a "formulaic recitation of the elements of a cause of action." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555)). For example, Plaintiff alleged within the "Factual Allegations" section of her OC:

> Defendants' actions . . . violated the FDCPA in a number of ways, including but not limited to the following:
> a. Defendants used false, deceptive and misleading representations and means in connection with the collection of the alleged debt, in violation of section 1692e;
> b. Defendants falsely represented the character, amount and legal status of the debt, in violation of section 1692e(2)(A) . . .

(O.C. at 2.) Even more egregiously, in outlining the "Factual Allegations" underlying her NJFCRA claim, Plaintiff wrote:

> [NJFDCPA] prohibits debt collectors from engaging in certain practices when attempting to collect a debt from New Jersey consumers. Some of the key prohibitions include:
> a. Harassment or abuse: Debt collectors cannot use threats of violence, obscene language, or repeatedly call with the intent to annoy or harass;

> b. False or misleading representations: Debt collectors cannot lie about the amount of the debt, falsely imply that they are attorneys or government representatives, or threaten actions they do not intend to take;
> c. Unfair practices: Debt collectors cannot collect any amount not authorized by the agreement creating the debt, such as unauthorized fees or interest. . . .

(*Id.* at 3.)

Plaintiff's "Causes of Action" are drafted in a similarly conclusive fashion. For example, in connection with her fraud claim against the PNC Defendants, Plaintiff wrote:

> Defendants Aimee D. Sumitra and Thomas W. Morris, while acting on behalf of PNC Bank, N.A., made false representations of material fact to Plaintiff, knowing that such representations were false, with the intent to deceive Plaintiff and induce her to act upon those representations.

(*Id.* at 5.) Similarly, in connection with her civil conspiracy claim, she wrote:

> Defendants, including John and Jane Does 1-5, agreed to engage in a course of conduct designed to harass and attempt to collect a debt from Plaintiff through unlawful means.
> Defendants committed overt acts in furtherance of this agreement, causing damage to Plaintiff.
> As a result of Defendants' civil conspiracy, Plaintiff is entitled to actual damages, punitive damages, and reasonable attorney's fees and costs.

(*Id.* at 4.) These are textbook examples of "formulaic recitation" that kill a complaint at the motion to dismiss stage. *See Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Plaintiff's Opposition to PNC's Cross-Motion to Dismiss is as unclear and haphazard as her primary filings in this matter and does nothing to assuage the Court's concerns about Defendants' ability to discern their conduct that Plaintiff complains of in the OC. (*See* ECF No. 20.) Thus, because the OC fails to comply with Rule 8's pleading standards and otherwise fails to state a claim for which relief can be granted under Rule 12(b)(6), PNC's Cross-Motion to Dismiss is granted, and the OC is dismissed without prejudice.

### iii.    Plaintiff's Fourth TRO Motion

Plaintiff's Fourth TRO Motion is another attempt by Plaintiff to obtain preliminary relief that the Court has already advised her repeatedly it cannot and will not grant. (*See* ECF Nos. 9, 19.) The Court previously ordered that "if Plaintiff wishe[d] to file a motion for preliminary injunctive relief pursuant to Federal Rule of Civil Procedure 65 in this matter in the future, she must file a letter of no more than two pages explaining the basis for the requested relief and seeking leave to file her motion." (ECF No. 19 at 5.) Because Plaintiff filed the Fourth TRO Motion without complying with the Court's Order, Plaintiff's Fourth TRO Motion is denied on that basis alone.

Even assuming, *arguendo,* that Plaintiff complied with the Court's directive, the Fourth TRO Motion would still be denied. Plaintiff has failed to show a "reasonable probability of eventual success in the litigation." *Reilly*, 858 F.3d at 176. Plaintiff's Fourth TRO Motion suffers from the same defects as her previous three requests the Court denied. (*See* ECF Nos. 9, 19.) What is more, the Court has already found that the OC fails to state a claim for relief against any Defendant. Therefore, Plaintiff has not established any likelihood of success on the merits that could warrant the extraordinary remedy of *ex parte* preliminary relief in a matter that is being dismissed.[15]

### iv.    Plaintiff's Motion for Sanctions

Plaintiff has sought sanctions against Defendant PNC Bank and its counsel for allegedly "fil[ing] [a] false statement" in its L. Civ. R. 7.1.1 Disclosure Statement, (ECF No. 14). (Motion

---

[15] The Fourth TRO Motion also makes reference to seeking an "Order to Enter Contempt." (*See* ECF No. 54 at *1.) Plaintiff argues that "Defendant failed to answer Court Ordered Subpoena, in Contempt of Court." (*Id.*) Plaintiff attaches to the Fourth TRO Motion a "Subpoena to Testify at a Deposition in a Civil Action," she filed directed at the PNC Defendants. (ECF No. 54-3.) Plaintiff previously wrote a letter to the Court regarding this subpoena. (*See* ECF No. 53.) Given that the Court is dismissing this action, Plaintiff's subpoena is rendered moot, and the Court will not hold any Defendant in contempt in connection with a mooted subpoena.

for Sanctions at 1.) Plaintiff haphazardly strung together words that the Court generously interprets as alleging that PNC Bank falsely claimed to be the holder of Plaintiff's mortgage. (*Id.*) However, attachments to the Initial Complaint indicate PNC Bank is the servicer of Plaintiff's mortgage, (ECF No. 1-1 at *46), and that Plaintiff made payments to "PNC Mortgage, A Division of PNC Bank, National Association," (*id.* at *44). Plaintiff's claims over PNC Bank's role in her mortgage dispute are tied to the claims in her OC, which the Court has already dismissed. It does not appear to the Court that PNC Bank made any sanctionable representations in this matter. *See Sheeran v. Blyth Shipholding S.A.*, No. 14-5482, 2015 WL 9048979, at *6 (D.N.J. Dec. 16, 2015) (finding counsel had "good-faith basis" for representations which did not meet "high standard" required to impose Rule 11 sanctions). Further, as the PNC Defendants note in opposition, Plaintiff appears to have failed to serve PNC Bank prior to filing the Motion for Sanctions, in violation of Federal Rule of Civil Procedure 11(c)(2). (ECF No. 52 at 1.)

While Plaintiff's Motion for Sanctions must be denied, the Court notes that Plaintiff's never-ending flurry of filings and nonchalant leveling of serious and consequential allegations implicates concerns that Plaintiff is abusing the judicial process. Plaintiff's ignorance of this Court's orders and continual rambling and indiscriminate filings have wasted this Court's judicial resources and veer much closer to sanctionable conduct than any conduct alleged to have been undertaken by the PNC Defendants in this matter. Plaintiff's Motion for Sanctions is denied. Plaintiff is kindly directed to heed the Court's advisement going forward, in the event she chooses to do so, consistent with the accompanying Order.

## CONCLUSION

For the foregoing reasons, PNC's Cross-Motion to Dismiss and Ohio's Motion to Dismiss are **GRANTED**. (ECF Nos. 15, 48.) The Court interprets the omission of the Pennsylvania Secretary of the Commonwealth and Delaware Secretary of State from the Operative Complaint as Plaintiff's motion to dismiss her claims against them pursuant to Rule 41(a), which is **GRANTED**. Plaintiff's Operative Complaint is **DISMISSED** without prejudice as to all Defendants. (ECF No. 47.) Plaintiff's First and Second Motions to Amend and Ohio's Motion for Judgment on the Pleadings are **DENIED** as moot. (ECF Nos. 22, 29, 40.) Plaintiff's Fourth TRO Motion and Motion for Sanctions are both **DENIED**. (ECF Nos. 51, 54.) An appropriate Order will accompany this Opinion.

_____

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: September 27, 2024