**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RUTH T. MCLEAN, | |
| Plaintiff, | Civil Action No. 23-22842 (RK) (JBD) |
| v. | **OPINION** |
| AIMEE D. SUMITRA, *et al.*, | |
| Defendants. | |

### KIRSCH, District Judge

**THIS MATTER** comes before the Court upon a Motion to Dismiss the Second Amended Complaint filed by Defendants PNC Bank, N.A. ("PNC Bank"), Aimee D. Sumitra, and Thomas W. Morris (collectively, the "PNC Defendants"). ("Motion," ECF No. 59.) Plaintiff Ruth T. McLean ("Plaintiff"), proceeding *pro se*, opposed the Motion (ECF Nos. 63, 64), and the PNC Defendants replied (ECF No. 65).[1]

Having considered the parties' submissions, the Court resolves the pending Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the PNC Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 59) is **GRANTED**, and this case is **DISMISSED** against the PNC Defendants with prejudice. In addition, the Court *sua sponte* **DISMISSES** the Second Amended Complaint's

---

[1] After the PNC Defendants replied, Plaintiff filed a nine-page "Affidavit of Facts" in response to the PNC Defendants' briefing. (ECF No. 66.)

claims against the remaining Defendants, as the Court finds the Defendants were improperly joined.[2]

## I.  **BACKGROUND**

### A. THE FORECLOSURE ACTION

Plaintiff has been engaged in a years-long litigation campaign— that has usurped the resources of state and federal courts in New Jersey alike—in an effort to halt a state court foreclosure action against her property in Plainsboro, New Jersey. On March 20, 2023, Defendant PNC Bank filed a Complaint in Foreclosure against Plaintiff in the Superior Court of New Jersey, Middlesex County, Chancery Division, General Equity (the "Foreclosure Action").[3] ("Reiley Cert.," ECF No. 59-2 at Ex. A); *see PNC Bank, N.A. v. Ruth T. McLean*, No. F-3424-23 (N.J. Super. Ct. Ch. Div. 2023). Without relying on the facts in the Complaint in Foreclosure for purposes of deciding the Motion,[4] the Complaint in Foreclosure alleges that on November 21, 2016, Plaintiff borrowed $170,000 from Gateway Mortgage Group, LLC ("Gateway") and subsequently executed a note to Gateway on the same day.[5] (*Id.* ¶ 1) To secure payment of the note, Plaintiff then allegedly signed and delivered a mortgage on her real property located at 143

---

[2] The remaining Defendants are Joshua Hahn and U.S. Bank, N.A. (together, the "U.S. Bank Defendants"), as well as Caitlin M. Donnelly, Esq., J. Eric Kishbaugh, Esq., Richard P. Abel, Esq., Brian C. Nicholas, Esq., Denise Carlon, Esq., and KML Law Group, P.C. (collectively, the "KML Defendants").

[3] The Court may take "judicial notice of the state court proceedings, which are a matter of public record." *McDonald v. Jones*, 427 F. App'x 84, 85 n.1 (3d Cir. 2011).

[4] Indeed, "[w]hile the Court may take judicial notice of each of these records, use of the records is limited. When a court takes judicial notice of a document, it 'may . . . not [be considered] for the truth of the matters purportedly contained within those documents.'" *Roche v. Aetna, Inc.*, No. 22-00607, 2023 WL 3173394, at *4 (D.N.J. May 1, 2023) (quoting *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000)).

[5] Plaintiff attached the executed loan application to Gateway ("Loan," ECF No. 64-1) and note ("Note," ECF No. 64-2) to her Opposition to the PNC Defendants' Motion; the documents corroborate the allegations in Defendant PNC Bank's Complaint in Foreclosure. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (stating that at the motion to dismiss stage, a court may only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents"). Here, the SAC is clearly based on the Loan and Note, and thus the Court will consider both in deciding this Motion.

Hampshire Drive, Plainsboro, New Jersey 08536. (*Id.* ¶¶ 2–3.) The mortgage was thereafter assigned to PNC Bank, which brought the Foreclosure Action. (*Id.* ¶ 2(b).)

On January 12, 2024, the Honorable Lisa M. Vignuolo, P.J.Ch. granted PNC Bank's Motion for Summary Judgment and dismissed Plaintiff's "affirmative defenses and quiet title claim." (Reiley Cert. at Ex. C.) Judge Vignuolo ordered the matter "returned to the Office of Foreclosure as uncontested." (*Id.*) On June 13, 2024, Judge Vignuolo entered a Final Judgment for Foreclosure in favor of PNC Bank. (*Id.* at Ex. D.) Plaintiff subsequently appealed the judgment to the Appellate Division on September 17, 2024 (*see id.* at Ex. E), and PNC Bank has represented it has moved to dismiss the appeal, with such motion currently pending before the Appellate Division. (ECF No. 59-1 at 4.)

Notably, on December 12, 2024, the Honorable Michael A. Toto, A.J.S.C. imposed restraints on Plaintiff's filings within the state court system, enjoining her from "filing any further civil complaints or motions in the Superior Court in the State of New Jersey against PNC Bank . . . until the complaint or motion has been reviewed by the Assignment Judge of Middlesex County." ("Supp. Reiley Cert.," ECF No. 65-1 at Ex. F at 2); *see In the Matter of Ruth T. McLean*, No. MID F-3424-23 (N.J. Super. Ct. Ch. Div. 2024). Judge Toto specifically found that:

> Ruth T. McLean filed approximately 18 applications in the instant foreclosure matter and 4 in a related case (MID-C-60-23), most of which are repetitive and procedurally deficient; and . . . Ruth T. McLean is a serial filer of motions in Chancery Division, General Equity Part duplicative of prior applications [] which do not raise new issues of merit and unfairly burdens the court system; and . . . the imposition of monetary sanctions would not be successful in curtailing Ruth T. McLean's continued abuse of the litigation process.

(*Id.* at 2.)

## B. THE INSTANT FEDERAL ACTION[6]

Plaintiff's serial filings in the instant matter are out of the same playbook as those in the Foreclosure Action, and all relate in some way to contesting the Foreclosure Action and the PNC Defendants' debt collection practices pursuant to the Foreclosure Action.[7] Over the course of ten months, this Court not only dismissed what it deemed the "Operative Complaint" in the matter, but also denied Plaintiff's four Motions for Temporary Restraining Orders (*see* ECF Nos. 6, 11, 17, 54), two Motions for Leave to Amend (*see* ECF Nos. 22, 40), and one Motion for Sanctions against PNC Bank and its counsel (*see* ECF No. 51).[8]

As relevant to this Motion, the Court notes that Plaintiff has filed or has proposed to file five different versions of a complaint in this matter. Plaintiff initially filed a 22-page Complaint and Request for Injunction against the PNC Defendants and the Ohio Secretary of State, the Pennsylvania Secretary of the Commonwealth, and the Delaware Secretary of State (together with the Ohio Secretary of State and Pennsylvania Secretary of the Commonwealth, the "Secretary of State Defendants") on November 30, 2023. (*See* ECF No. 1 at *3–4.) The initial Complaint's allegations and claims were, charitably, difficult to discern. For example, the Complaint stated that Plaintiff brought the action under the "Fair Housing Act section 837, section 245, 701, National

---

[6] Pin-cites preceded by an asterisk refer to the page numbers in the CM/ECF header.

[7] The SAC indicates this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy is "up to $150,000" (SAC at *15), and the parties are citizens of different states. (*Id.* ¶¶ 1, 5–8 (indicating Plaintiff is a citizen of New Jersey, but Defendants are citizens of Pennsylvania and Ohio).) The Court notes that the SAC does not allege the citizenship of Defendants U.S. Bank and Joshua Hahn, but because the Court dismisses those Defendants as improperly joined, this is of no concern.

[8] Plaintiff has made a handful of other filings, including a 12-page "Writ of Removal," which sought the same relief Plaintiff has consistently been denied by the Court—a stay of the Foreclosure Action. (*See* ECF No. 49 at 1.) Plaintiff also filed a letter that requested the Court to subpoena documents from the PNC Defendants in relation to Plaintiff's Motion for Sanctions. (ECF No. 53.)

Currency Act section et seq.[,] 4th Amendment, Preamble to Constitution- Life, Liberty and pursuit of Happines [sic]; Article for contracts." (*Id.* at *5.) Yet, two pages later, Plaintiff described the relief sought as:

> Damages sought for all the above factual claims possess actual prior court awarded damages: Coloring Title: Unlawful Note Negotiable Instrument Conversion: Consumer Fraud: Injunction against the State Court, MIDDLESEX COUNTY SUPERIOR COURT, CHANCERY DIVISION, SWF-F-003424-23, venue has no jurisdiction based on the contract. may cause harm under Rooker-Feldman Doctrine.

(*Id.* at *7.)

Months later, Plaintiff continued her kitchen-sink approach to this litigation by filing two Proposed Amended Complaints. (*See* ECF No. 22 at *3–8 (filing the proposed amendment as part of her first Motion for Leave to Amend; ECF No. 40 at *1–2 (filing the proposed amendment as part of her second Motion for Leave to Amend).) The Proposed Amended Complaints sought to add new Defendants (Gateway First Bank and Freddie Mac) and different claims, including claims for "racketeering," "debt peonage-involuntary servitude," defamation, identity theft, "servicer misconduct," "transaction misrepresentation," and violation of consumer protection laws. (*Id.*) Without waiting for the Court to rule on either of Plaintiff's pending Motions for Leave to Amend, Plaintiff unilaterally filed her First Amended Complaint. (ECF No. 47.) The First Amended Complaint brought claims against only the PNC Defendants and "John and Jane Does 1–5" for violation of the Fair Debt Collection Practices Act ("FDCPA"), violation of the New Jersey Fair Credit Reporting Act, fraud, and civil conspiracy. (*Id.*)

In granting Motions to Dismiss filed by Defendant Ohio Secretary of State and the PNC Defendants (*see* ECF Nos. 15, 48), the Court considered the allegations in both Plaintiff's initial Complaint (ECF No. 1) and First Amended Complaint (ECF No. 47) (together, the "Operative Complaint"), and found that (i) the 1793 Anti-Injunction Act prohibited the Court from enjoining

the Foreclosure Action; and (ii) the Operative Complaint failed to comply with Federal Rule of Civil Procedure 8's pleading standards, given that its allegations ranged from confusingly dense to skeletal and conclusory so as to fail under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (ECF No. 55.) The Court permitted Plaintiff thirty days to file an amended pleading "that respond[ed] to or cur[ed] the defects identified" in the Operative Complaint. (ECF No. 56.)

Now, Plaintiff has filed an almost-entirely-brand-new Second Amended Complaint. ("SAC," ECF No. 57.) While still naming the PNC Defendants, the SAC names two new sets of Defendants: the U.S. Bank Defendants and KML Defendants.[9] (*Id.*) The SAC alleges ten counts, most of which have never appeared in any of Plaintiff's proposed or actual pleadings to date: violation of the FDCPA (Count I), violation of the Real Estate Settlement Procedures Act ("RESPA") (Count II), violation of the Truth in Lending Act ("TILA") (Count III), civil conspiracy (Count IV), violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count V), violation of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA") (Count VI), negligence (Count VII), negligent infliction of "mental anguish emotional distress" (Count VIII), intentional infliction of emotion distress ("IIED") (Count IX), and negligent infliction of emotional distress (Count X). (*Id.* at 3–10.) Plaintiff seeks damages "up to $150,000," as well as a "[d]eclaratory decision upon review of the Note as to whose obligation to pay interest," and "the return of Plaintiff's Property." (*Id.* at 11.)

The PNC Defendants filed a Motion to Dismiss the Second Amended Complaint on November 22, 2024. (ECF No. 59.) Plaintiff filed two separate oppositions to the Motion (ECF

---

[9] The KML Defendants are listed on the Foreclosure Action's Complaint in Foreclosure as counsel for PNC Bank. (*See* Reiley Cert. at Ex. A at 1.) The KML Defendants are the only group of Defendants who have not yet entered an appearance in this matter, but the Court notes that it may well be that none of the KML Defendants were properly served with process. It appears Plaintiff improperly served all the KML Defendants by sending unsigned summonses in one certified mailing to "PNC Bank N.A. c/o KLM [sic] Law Group P.C." at KML Law Group's business address. (*See* ECF No. 61 at *4.)

Nos. 63, 64),[10] and the PNC Defendants replied. (ECF No. 65.) After the PNC Defendants replied, Plaintiff filed an "Affidavit of Facts" that is essentially a sur-reply to the PNC Defendants' Reply. (ECF No. 66.)

## II.    LEGAL STANDARD

### A.    FEDERAL RULES OF CIVIL PROCEDURE 18(A) AND 20(A)(2)

Pursuant to Federal Rule of Civil Procedure ("Rule") 18(a), "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). However, in a multi-defendant case such as this one, "the propriety of joinder is most directly controlled by the Rule 20 limits on joinder of defendants." *McKinney v. Hemsley*, No. 14-3564, 2015 WL 5949846, at *3 (D.N.J. Oct. 9, 2015). Rule 20(a)(2) states that persons may be joined in one action as defendants where:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

---

[10] The Court observes that the two oppositions have very different tones, styles, formatting, and coherency—to the point where it stretches the bounds of credulity that they were both drafted by *pro se* Plaintiff. For example, Plaintiff's first opposition includes clear formatting and—while not necessarily on point—cogent analysis of some of the PNC Defendants' arguments in its Motion. (*See* ECF No. 63.) However, Plaintiff's second opposition is the complete opposite, opening with the paragraph:

> Affiant/Consumer/Guarantor/Payee/Plaintiff: I am Mclean, Ruth-T/agent control interest party of the RUTH T MCLEAN/principal person account named endorsement identified on the $170,000 Note and Mortgage for ownership interest acquired in the consumer principal dwelling instruments on November 21, 2016.

(ECF No. 64 at *2.) The Court notes that there are similar diverging tones, styles, formatting, and coherency between Plaintiff's initial Complaint (*see* ECF No. 1), First Amended Complaint (*see* ECF No. 47), and Second Amended Complaint (*see* ECF No. 57). This obviously concerns the Court, because beyond the myriad of professional and ethical issues with Plaintiff potentially retaining a lawyer but still representing that she is proceeding *pro se*, the Court will not hold pleadings drafted by a lawyer to the less-stringent standard afforded *pro se* litigants. *See Cason v. Middlesex Cnty. Prosecutors' Off.*, No. 18-2101, 2022 WL 2871195, at *3 (D.N.J. July 21, 2022). Nevertheless, given that the Court dismisses Plaintiff's Second Amended Complaint with prejudice here, it will afford Plaintiff leniency solely for purposes of disposing of the instant Motion.

Fed. R. Civ. P. 20(a)(2). While the requirements of Rule 20(a)(2) are to be "liberally construed," they are not "license to join unrelated claims and defendants in one lawsuit." *Fisher v. Camden Cnty. Corr. Facility*, No. 21-13212, 2023 WL 4295770, at *3 (D.N.J. June 29, 2023) (quoting *Rouse v. Starks*, No. 16-3422, 2018 WL 707943, at *5 (D.N.J. Feb. 2, 2018)). This would constitute improper joinder.

Where the Court finds that there has been improper joinder, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Where a court "drop[s]" an improperly joined party, "that defendant is dismissed from the case without prejudice." *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006).

## B. FEDERAL RULE OF CIVIL PROCEDURE 8

Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 8's purpose is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While under Rule 8(a) plaintiffs are not required to set forth detailed factual allegations in their complaints, they have an "obligation to provide the 'grounds' of [their] 'entitle[ment] to relief.'" *Id.*

## C. FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

For a complaint to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), it must contain sufficient factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, allegations that are "no more than conclusions" may be disregarded. *Id.* at 679. Restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The court accepts allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III.    DISCUSSION

The Court first addresses the improper joinder of the New Defendants before turning to the merits of the SAC as it applies to the remaining set of Defendants, the PNC Defendants.

### A.    THE NEW DEFENDANTS

"A district court may raise the issue of improper joinder *sua sponte*." *Alfred v. New Jersey*, No. 13-0332, 2015 WL 4138882, at *2 (D.N.J. July 9, 2015). For the first time in her Second Amended Complaint—and without seeking leave—Plaintiff seeks to bring claims against two new sets of Defendants: the U.S. Bank Defendants and the KML Defendants (together, the "New Defendants"). (*See* SAC at *2.) The crux of Plaintiff's allegations are that the U.S. Bank Defendants "failed [sic] obligation to pay interest on the Note," (*id.* ¶ 17), and the KML Defendants "filed baseless legal actions to intimidate and unlawfully collect debts" (*id.* ¶ 16). However, back when the Court permitted Plaintiff to file an amended pleading "*that respond[ed] to or cur[ed] the defects identified*" in the Operative Complaint, (ECF No. 56 (emphasis added)), the only transaction at issue involved the PNC Defendants "act[ing] fraudulently and generat[ing] false

9

certifications (individually and separately) in an attempt to collect debt from Plaintiff." (*See* ECF No. 47 ¶ 10.)

"A limited grant of leave to amend does not entitle Plaintiff[] to amend the complaint outside the scope of that leave." *T.J. McDermott Transp. Co., Inc. v. Cummins, Inc.*, No. 14-4209, 2017 WL 11476192, at *2 (D.N.J. Jan. 17, 2017). Because Plaintiff was not granted leave to amend the Operative Complaint to add additional claims and Defendants in this matter, Plaintiff's amendments to add the New Defendants can be stricken pursuant to Federal Rule of Civil Procedure 15(a)(2). Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave"); *see Giles v. Med. Contractor CMS*, No. 09-045, 2009 WL 1024679, at *3 (D. Del. Apr. 15, 2009) ("Plaintiff may not add new claims or new defendants without seeking leave to amend.")

Even so, Plaintiff's claims against each set of Defendants in this matter only appear to tenuously arise "out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). While it appears Plaintiff is alleging the acts of Defendants all occurred in light of the Foreclosure Action, there is significant attenuation and scant overlap between (i) the U.S. Bank Defendants purportedly failing to pay interest on the Note; (ii) the KML Defendants opting to file purportedly "baseless legal actions" against Plaintiff, and (iii) the PNC Defendants "generat[ing] false certifications." Indeed, it does not appear that these are the same transaction or occurrence. *Id.*; *see Dougherty v. Dupes*, No. 17-01541, 2018 WL 3869742, at *2 (M.D. Pa. Aug. 15, 2018) ("Although the court anticipates that [*pro se* plaintiff] might offer the conclusory averment of an imagined overarching conspiracy, it would be inadequate to assuage this court that it should exercise its discretion to join these additional defendants in this action.") Thus, the Court

**DISMISSES** the SAC's claims as brought against the U.S. Bank Defendants and KML Defendants, as these New Defendants were improperly joined.

### B. THE PNC DEFENDANTS

The Court finds that the SAC should be dismissed with prejudice against the remaining Defendants—the PNC Defendants—on three grounds: (i) the Anti-Injunction Act of 1793; (ii) statute of limitations; and (iii) failure to meet the elements of the claims underlying the SAC's Counts.[11]

#### 1. *Anti-Injunction Act of 1793*

Much like in the Operative Complaint, Plaintiff still seeks to have this Court enjoin the Foreclosure Action by having the Court order "the return of Plaintiff's property."[12] (SAC at *15.) As the Court made clear in its Opinion dismissing the Operative Complaint (ECF No. 55 at 14), the Anti-Injunction Act imposes "an absolute prohibition [] against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970); *see Chick Kam Choo*

---

[11] The PNC Defendants also renew their argument that the Court must abstain from hearing this matter pursuant to the *Colorado River* abstention doctrine as this matter is parallel to the Foreclosure Action. (ECF No. 59-1 at 9–14.) While the Court acknowledges the PNC Defendants provided additional support for their argument in the Motion, the Court remains skeptical that this matter has "substantially identical claims [and] nearly identical allegations and issues." (*See* ECF No. 55 at 14); *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009) (quoting *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005)). The PNC Defendants sought a judgment of foreclosure in the Foreclosure Action (*see* Reiley Cert. at Ex. D); here, Plaintiff seeks damages (and to some extent, injunctive relief) in connection with the PNC Defendants' purported debt collection practices, (*see* SAC at *15 (indicating Plaintiff seeks "compensatory/statutory damages . . . up to $150,000")). *See also DeHart v. U.S. Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1046 (D.N.J. 2011) (finding a "state foreclosure action" that involved a bank defendant "seeking a judgment of foreclosure on property subject to a mortgage" not parallel to a federal action "seek[ing] only damages for various debt collection practices [that did] not seek to invalidate the foreclosure proceeding"). Therefore, the Court rejects the PNC Defendants' *Colorado River* arguments, but nonetheless dismisses the matter on other grounds.

[12] This is contrary to her Opposition to the PNC Defendants' Motion where she argues that "Plaintiff is not seeking to enjoin the state foreclosure action but rather seeks damages and declaratory relief for Defendants' violations of federal and state law." (ECF No. 63 at 5.)

*v. Exxon Corp.*, 486 U.S. 140, 146 (1988) (noting the Act's three narrowly-read exceptions apply only "when expressly authorized by statute, necessary in aid of the court's jurisdiction, or necessary to protect or effectuate the court's judgment"). Here, the Court has already held that no exception to the Act applies (*see* ECF No. 55 at 15), and thus the Court is prohibited from enjoining the Foreclosure Action.[13]

### 2. *Statute of Limitations*

The PNC Defendants assert that the statute of limitations on Plaintiff's TILA claim (Count IV)—which relates back to a Loan and Note issued in 2016—has run, and thus, the claim is time-barred. *See Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc.*, 706 F. Supp. 3d 489, 511 (D.N.J. 2023) ("The statute of limitations 'can serve as the basis for dismissal under Fed. R. Civ. P. 12(b)(6), as long as the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" (quoting *McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010)).

Here, Plaintiff's TILA claim (Count III) is based on several purported failures in disclosure by the PNC Defendants. (*See, e.g.* SAC ¶¶ 36(a) ("Failure to Provide Right of Recission Notices"); 36(b) ("Failure to Provide Rights to [C]redit").) It is true that the "TILA requires lenders to make certain disclosures to borrowers and gives borrowers a civil cause of action against creditors who violate these disclosure provisions." *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 500 (3d Cir. 1998). However, a TILA claim based on the omissions of a lender "is subject to a one-year statute of limitations, which begins to run when the underlying contract is executed." *Herzog v.*

---

[13] Plaintiff's request to this Court to issue a "[d]eclaratory decision upon review of the Note as to whose obligation to pay interest" (SAC at *15), would almost certainly disrupt the Foreclosure Action, and thus is also barred by the Anti-Injunction Act. *See U.S. Steel Corp. Plan for Emp. Ins. Benefits v. Musisko*, 885 F.2d 1170, 1175 (3d Cir. 1989) ("Where, as here, declaratory relief would produce the same effect as an injunction, a declaratory judgment is barred . . .").

*IndyMac Bank, FSB*, No. 11-4571, 2011 WL 5513205, at *3 (D.N.J. Nov. 9, 2011) (citing 15 U.S.C. § 1640(e)). As is clear from the Loan and Note, both documents were executed on November 21, 2016. (Loan at *3; Note at *2.) Thus, Plaintiff's TILA claim comes well outside the limitations period.

In her Opposition, Plaintiff argues that "equitable tolling applies due to Defendants' fraudulent concealment of material facts." (ECF No. 63 at 7.) However, "[a] plaintiff who made the ordinary error of not reading a contract may not invoke the extraordinary remedy of equitable tolling." *Aversano v. Santander Bank, N.A.*, 828 F. App'x 109, 110 (3d Cir. 2020). Plaintiff alleges that "Defendants failed to disclose critical information about the loan, including the annual percentage rate (APR), finance charges, and the payment schedule." (ECF No. 63 at 7.) Yet, the very first page of the Note states that interest will be charged at a "yearly rate of 3.625%" and that payments will be made "on the 1st day of each month beginning on January 17, 2017" in the amount of "$775.29." (Note at *2.) The Note also lays out information about loan charges and late charges for overdue payments. (*See id.* at *3.) Plaintiff's claim that Defendants "failed to disclose critical information about the loan" is belied by the Note's explicit terms. Count III is untimely, and thus, **DISMISSED**.

### 3. *Failure to Meet the Elements of the Claims Underlying the SAC*

The PNC Defendants attack the substance of Plaintiff's remaining claims pursuant to Rule 12(b)(6), arguing in sum that Plaintiff failed to allege one or more elements of the remaining Counts of the SAC.

### i. Failure to Allege a "Debt Collector"

To start, to make out an FDCPA claim (Count I), a plaintiff must allege, in part, that "the defendant is a debt collector." *Barbato v. Greystone All., LLC*, 916 F.3d 260, 265 (3d Cir. 2019). However, the PNC Defendants argue that PNC Bank is not a debt collector, but rather, a creditor.

(ECF No. 59-1 at 16.) "Creditors—as opposed to debt collectors—generally are not subject to the FDCPA." *Cooper v. Pressler & Pressler, LLP*, 912 F. Supp. 2d 178, 184 (D.N.J. 2012) (internal citations omitted); *see also Staub v. Harris*, 626 F.2d 275, 277 (3d Cir. 1980) ("The [FDCPA] does not apply to persons or businesses collecting debts on their own behalf . . . It is directed to those persons who are engaged in business for the principal purpose of collecting debts.")

Here, the SAC fails to allege that PNC Bank is a "debt collector," beyond a conclusory allegation that "Defendants, acting as debt collectors with respect to Plaintiff's mortgage debt, engaged in multiple violations of the FDCPA . . ." (SAC ¶ 22.) While it appears to the Court that Defendant PNC Bank is clearly a creditor seeking to collect its own debt through the Foreclosure Action, Plaintiff nonetheless fails to support its "[t]hreadbare recital" of PNC Bank as a "debt collector" with sufficient facts for this Court to determine whether the FDCPA is applicable. *See Saafir v. Bayview Loan Servicing, LLC*, No. 17-3735, 2018 WL 1069413, at *3 (D.N.J. Feb. 26, 2018), *aff'd*, 751 F. App'x 166 (3d Cir. 2018) (dismissing FDCPA claim where the "complaint simply d[id] not provide sufficient facts for [the] Court to determine whether [lender] [was] a 'debt collector' for purposes of the FDCPA"). Thus, the Court **DISMISSES** Count I.

### ii.    Failure to Allege Damages

Plaintiff's RESPA claim (Count II) also fails. As part of making out a RESPA claim, a plaintiff must allege "actual damages to the borrower as a result of the failure to comply with [12 U.S.C.] § 2605." *Noel v. Bank of New York Mellon*, No. 18-04798, 2019 WL 1434939, at *5 (D.N.J. Apr. 1, 2019) (quoting *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016)). Plaintiff's RESPA claim has two bases: (i) Defendants purportedly failed to acknowledge and take appropriate action on qualified written requests sent by Plaintiff; and (ii) Defendants allegedly engaged in a number of improper servicing practices, including mishandling payments, failing to correct billing errors, etc. (SAC ¶¶ 31, 32.) Plaintiff further alleges that these violations

of RESPA "caused confusion and financial harm to Plaintiff" as well as "financial loss, emotional distress, mental anguish and an increased risk of foreclosure on her home." (*Id.* ¶¶ 32–33.)

Plaintiff's broad and conclusory allegations of "financial loss," without any clear connection to the purported RESPA violations, amount to pleading a "bare violation." *Mo v. JPMorgan Chase Bank, N.A.*, No. 14-387, 2021 WL 1608895, at *5 (D.N.J. Apr. 26, 2021). Indeed, "[i]f a plaintiff simply can allege that failure to respond to a letter caused distress, without more, any RESPA claim would survive a motion to dismiss." *Giordano*, 160 F. Supp. 3d at 781. Plaintiff's attempt to plead a causal connection between the purported RESPA violations and her conclusory harm by alleging the violations led to "a denial of credit for the consumer extension of credit for property or services not-delivered to the consumer or the consumer designee as agreed," (SAC ¶ 32), is vague, confusing, and insufficient to sustain a claim. Thus, Count II must be **DISMISSED**.

iii.    Failure to Allege Unlawful Conduct or Contractual Provisions

With respect to Plaintiff's NJCFA claim (Count V), the NJCFA "protects consumers against unethical practices and dealings in the marketing of merchandise and real estate." *Monarch Life Ins. Co. v. Senior*, No. 06-559, 2006 WL 3825138, at *4 (D.N.J. Dec. 22, 2006). To state an NJCFA claim, a plaintiff must allege "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007) (cleaned up). An NJCFA claim is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, meaning the claim must "state with particularity the circumstances constituting fraud or mistake, although intent, knowledge, and other conditions of a person's mind may be alleged generally." *Wright v. Ocwen Loan Servicing, LLC*, No. 16-8989,

2019 WL 4013954, at *7 (D.N.J. Aug. 26, 2019) (quoting *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017)).

The SAC fails to allege an NJCFA claim with Rule 9(b)'s required specificity.[14] Plaintiff merely alleges:

> a. Unconscionable Commercial Practices: Defendants employed practices that were unethical, oppressive, and unscrupulous in connection with the sale of a consumer credit transaction for a Money Purchase Mortgage. Specifically, Defendants denial of credit adverse actions misleading notices forms demanding to repay cash income for the consumer the extension of credit 11/21/2016 consumer credit transaction.

> b. Deception and Fraud: Defendants made false forms and misrepresentations regarding the consumer extension of credit prepayment by sending notices demanding repayment of the prepaid credit balance.

> c. False Pretense: Defendants used false pretense and deceptive practices to create a misleading impression about a debt owed and demand cash payments, thereby inducing Plaintiff to act to her detriment.

(SAC ¶ 47.) These three bases are "completely bereft of any background details concerning how the supposed fraud was accomplished, who was involved, and when it took place." *Wright*, 2019 WL 4013954, at *7; *see KZ Ent. LLC v. Sulekha USA LLC*, No. 24-0812, 2024 WL 5244479, at *6 (D.N.J. Dec. 30, 2024) (dismissing NJCFA claim where plaintiff failed to allege the "'what, where, and when' of any alleged misrepresentation by Defendant"). Thus, Count V is **DISMISSED**.

Next, in looking at the TCCWNA, the Court notes it was enacted "to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts." *Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.*, 25 A.3d 1027, 1044 (N.J. 2011).

---

[14] This claim may also be untimely. The only date identified in Count V is November 21, 2016. (SAC ¶ 47(a).) Plaintiff's initial Complaint was filed over seven years later on November 30, 2023. (ECF No. 1.) This puts the claim outside NJCFA's six-year statute of limitations. *See* N.J.S.A. 2A:14-1. Because it may well be that Plaintiff's failure to plead a timely claim is a by-product of her lack of specificity under Rule 9(b), Count V is dismissed pursuant to Rule 9(b) rather than on statute of limitations grounds.

As part of pleading a violation of the TCCWNA (Count VI), a plaintiff must allege, in part, that the contract "contains a provision that 'violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee' as established by State or Federal law.'" *Truglio v. Planet Fitness, Inc.*, 360 F. Supp. 3d 274, 278 (D.N.J. 2018) (quoting N.J.S.A. 56:12–15, 12–17)). Here, even presuming the Loan and Note constitute "consumer contracts," Plaintiff fails to cite any provision in them that purports to violate Plaintiff's consumer rights. Plaintiff merely alleges that Defendants violated the TCCWNA by:

> a. Inclusion of Prohibited Provisions: Including terms in their consumer contract that violate the rights of the Plaintiff under the CFA and other applicable laws. Specifically, the contract application (Credit Agreement) contained the agreement for compliance with the Equal Credit Opportunity Act.

> b. Failure to Provide Required Notices: Failing to provide clear and accurate notices regarding Plaintiff's rights under the contract and applicable consumer protection laws.[15]

(SAC ¶ 52(a)–(b)); *see Rivera v. Washington Mut. Bank*, 637 F. Supp. 2d 256, 268 (D.N.J. 2009) (dismissing TCCWNA claim where "Plaintiffs have not identified which provisions of either document allegedly violate a clearly established right of Plaintiff[] or responsibility of [Lender]"); *Martino v. Everhome Mortg.*, 639 F. Supp. 2d 484, 493 (D.N.J. 2009) (same). Therefore, Count VI of the SAC must be **DISMISSED.**

### iv.    Failure to Allege an Independent Duty Lying in Tort

Turning to Plaintiff's tort claims, the SAC alleges three different forms of negligence claims: negligence (Count VII), "negligent infliction of mental anguish emotional distress" (Count VIII), and "negligent infliction of emotional distress" (Count X). All three claims fail because the

---

[15] As evidence of Plaintiff's disjointed pleading style, Count VI of the SAC also contains allegations regarding "Breach of Warranty under the Uniform Commercial Code (UCC) 53." (SAC ¶¶ 54–57.) Because it is not clear to the Court what claim Plaintiff is attempting to bring via "UCC 53," and the claim itself is not actually a Count in the SAC, the Court declines to address it any further.

PNC Defendants do not owe Plaintiff a duty lying in tort. *See, e.g., Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268 (N.J. 2002) ("Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law.")[16] In Count X, Plaintiff alleges in a conclusory fashion that "Defendants owed a duty of care to Plaintiff to avoid causing emotional harm through negligent actions." (SAC ¶ 72(a).) However, the SAC does not contain any allegations suggesting that the PNC Defendants' duty to Plaintiff goes beyond purportedly failing to abide by the terms of the Loan and Note. *See Perkins v. Washington Mut., FSB*, 655 F. Supp. 2d 463, 471 (D.N.J. 2009) ("[M]ere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort.") Further, "it is axiomatic that a plaintiff may not recover for emotional distress caused by a defendant's alleged breach of contract." *Skypala v. Mortg. Elec. Registration Sys., Inc.*, 655 F. Supp. 2d 451, 461 (D.N.J. 2009) (dismissing negligence claims against parties to a mortgage and note because parties "owed no independent duty to Plaintiff"). Therefore, because the PNC Defendants did not owe an independent duty to Plaintiff, the Court **DISMISSES** Counts VII, VIII, and X.

> v.    Failure to Allege "Extreme and Outrageous Conduct"

Plaintiff's claim for intentional infliction of emotional distress (Count IX) must be dismissed as well. To allege a claim for IIED, a plaintiff must plead "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Taylor v. Metzger*, 706 A.2d 685, 694 (N.J. 1998). New Jersey sets a "high bar" for a plaintiff to establish extreme and outrageous conduct. *Peters v. Countrywide Home Loans, Inc.*, No. 15-6329, 2016 WL 2869059,

---

[16] The parties appear to agree that New Jersey law applies to Plaintiffs' common law claims, and thus, the Court will not engage in a choice-of-law analysis. (*See, e.g.*, ECF No. 59-1 at 23 (citing New Jersey law in connection with Plaintiff's negligence claims); ECF No. 63 at 7 (applying New Jersey law in connection with Plaintiff's civil conspiracy claim).)

at *6 (D.N.J. May 17, 2016). Here, Plaintiff alleges that the "extreme and outrageous conduct" committed by the PNC Defendants is "debt collection harassment, foreclosure eviction." (SAC ¶ 68.) There are multiple cases in this District dismissing IIED claims alleged on the same grounds, as "attempting to collect a debt does not rise to a level of outrageous conduct, especially under New Jersey's high bar for outrageous behavior." *Diaz v. Bank of New York*, No. 15-1954, 2016 WL 111420, at *6 (D.N.J. Jan. 11, 2016); *see Peters*, 2016 WL 2869059, at *6; *see also Francis v. TD Bank, N.A.*, No. 12-7753, 2013 WL 4675398 (D.N.J. Aug. 30, 2013). Thus, the Court **DISMISSES** Count IX.

### vi.    Failure to Allege an Underlying Tort

Finally, Plaintiff's civil conspiracy claim (Count IV) must necessarily be dismissed because a civil conspiracy claim in New Jersey "require[s] the plaintiff to plead a viable underlying tort claim." *Dill v. Yellin*, 725 F. Supp. 3d 471, 484 (D.N.J. 2024); *Brown ex rel. Est. of Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 517 n.10 (D.N.J. 2002) ("Civil conspiracy is not an independent cause of action, and conspiracy liability depends on the presence of an underlying finding of tort liability.") Because the Court has dismissed all other tort claims plead in the SAC, there is no underlying claim for Plaintiff's civil conspiracy claim to stand on. Thus, Count IV is **DISMISSED**.

### C. Futility of Amendment

Consideration of Plaintiff's arguments in her opposition briefing (ECF Nos. 63, 64) and even her sur-reply (ECF No. 66) fails to refute the clear and necessary dismissal of all Counts of the SAC. Indeed, most of Plaintiff's arguments are simply reiterations of the allegations in the SAC. (*See* ECF No. 63 at 7–9.) While the Court is cognizant of Plaintiff's *pro se* status, a number of her arguments lack cohesion or clarity, such as:

> No Debt. The Plaintiff delivered the goods ($170,000 Note collateral prepayment) on 11/21/2016. Evidence performance completed and accepted by way of the allonge on the Note, is signed by the bank President CEO, J. Kevin Stiff with the words "Pay To The Order Of" Gateway Group Mortgage. Entails their contract terms for their promise to repay principal and interest in the Note, (12 USC 1431a); English Bills of Exchange 1882(27(1). Plaintiff tender of payment performance was sent to the Defendant(s) for acceptance to utilize the principal interest balance to apply to the principal account to setoff.

(ECF No. 66 at *2.) While she attempts to provide the Court with two separate "Affidavit[s] of Facts," (ECF Nos. 64, 66) to try to cure some of the specificity issues with the SAC, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Thus, it remains that all Counts of the SAC must be dismissed.

With that said, despite this Court explicitly ordering Plaintiff to file an amended pleading "*that responds to or cures the defects identified*" in the Operative Complaint, (ECF No. 56 (emphasis added)), Plaintiff ignored the Court's order and instead filed a pleading asserting almost entirely new claims against almost entirely new Defendants. In the Court's review of Plaintiff's five different iterations of a filed or proposed pleading, not one has withstood muster under Rule 8 or Rule 12(b)(6). Plaintiff's chameleon-like approach of changing claims and Defendants with each amended pleading has not had any success to date, and it is clear to the Court that permitting Plaintiff to further amend would be futile. *See Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) ("While [Rule 15(a)] also requires that leave to amend should be 'freely given' a district court has the discretion to deny this request if it is apparent from the record that . . . the amendment would be futile.") Further, amendment would be inequitable to Defendants, particularly the PNC Defendants, who have been forced to expend time and resources defending against Plaintiff's repeat, meritless filings. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112–13 (3d Cir. 2002)

("[D]ismissals of frivolous claims do not require leave to amend due to the long tradition of denying leave to amend under Rule 15(a) when amendment is inequitable or futile"); *Houser v. Donahoe*, No. 12-1024, 2013 WL 6838699, at *6 (W.D. Pa. Dec. 27, 2013), *aff'd sub nom. Houser v. Postmaster Gen. of U.S.*, 573 F. App'x 141 (3d Cir. 2014) (affirming the district court's dismissal of a case with prejudice and without leave to amend the complaint where it would be inequitable to require the defendant "who already once has exhaustively and successfully defended Plaintiff's grievances" to do so again). Indeed, "all that truly remains of Plaintiff's case is [her] seemingly unwavering belief that it should and will proceed, if only [s]he can utter the right combination of words and legal terms." *Houser*, 2013 WL 6838699, at *6. Thus, consistent with the mandate of Rule 15(a), and in the interests of justice, the Court is compelled to **DISMISS** the case against the PNC Defendants with prejudice and declines to afford Plaintiff leave to file another amended pleading with respect to the improperly-joined New Defendants.

## **CONCLUSION**

For the foregoing reasons, the PNC Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 59) is **GRANTED**. The case is **DISMISSED** against the PNC Defendants with prejudice and dismissed against the New Defendants without prejudice, though without leave to further amend. An appropriate Order will accompany this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: February 11, 2025