**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUTH T. MCLEAN,<br><br>Plaintiff,<br><br>v.<br><br>AIMEE D. SUMITRA, *et al.*,<br><br>Defendants. | Civil Action No. 23-22842 (RK) (JBD)<br><br>**MEMORANDUM ORDER** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Plaintiff Ruth T. McLean's ("Plaintiff") motion to reopen her case and amend her complaint for the third time (the "Motion," ECF No. 72). Defendants PNC Bank, N.A. ("PNC"), Aimee D. Sumitra, and Thomas W. Morris (collectively, "Defendants") opposed the Motion and cross-moved for recovery of attorney's fees and costs from Plaintiff. (ECF No. 73; "Opp.," ECF No. 73-1.) Plaintiff replied. ("Rep.," ECF No. 74.)[1] For the reasons stated below, Plaintiff's motion and Defendants' cross-motion are both **DENIED**.

**I.      PLAINTIFF'S MOTION TO REOPEN**

    Plaintiff's Motion is but the latest in her "years-long litigation campaign" to "halt a state court foreclosure action against her property in Plainsboro, New Jersey." (*See* ECF No. 70 at 2.) As the Court detailed at length in its prior opinion, Plaintiff "has usurped the resources of state and federal courts in New Jersey alike," including—by the Court's count—four Motions for Temporary Restraining Orders, repeated Motions for Leave to Amend, a Motion for Sanctions against Defendant PNC and its counsel, and at least 22 applications in state courts across multiple

---

[1] Plaintiff also filed an "Affidavit of Facts" in response to Defendants' opposition and cross-motion. (ECF No. 75.)

foreclosure cases. (*Id.* at 2–3; *see also* ECF No. 55 at 2–7 (detailing the "avalanche" of filings Plaintiff made in this case).) The Court also noted that in December 2024, the Honorable Michael A. Toto, A.J.S.C. enjoined Plaintiff—whom he described as a "serial filer"—from filing further civil complaints or motions in the Superior Court of New Jersey without leave. (*Id.* at 3.)

Plaintiff filed her initial Complaint in this action in November 2023. (ECF No. 1.) Over the next nine months, Plaintiff filed three amended complaints—two as proposed attachments to her Motions for Leave to Amend—with each complaint containing slightly different defendants, causes of action, and requests for relief. (*See* ECF Nos. 22, 40, 47.) The Court dismissed the "Operative Complaint" in September 2024.[2] (*See* ECF No. 55.) The Court held that it was prohibited from enjoining Plaintiff's underlying state foreclosure action pursuant to the 1793 Anti-Injunction Act, and that Plaintiff's Complaint failed to comport with the minimal pleading requirements as set forth in Federal Rule of Civil Procedure ("Rule") 8. (*See id.*) Cognizant of Plaintiff's *pro se* status, the Court dismissed the Operative Complaint without prejudice and allowed Plaintiff 30 days to file an amended pleading that "respond[ed] to or cure[d] the defects identified" in her pleading. (ECF No. 56 at 2.)

Despite the fact that Plaintiff "was not granted leave to amend the [initial] Complaint to add additional claims and Defendants," Plaintiff did so anyway, with her new Second Amended Complaint only "tenuously aris[ing]" out of the same transaction or occurrence as her first pleading. (ECF No. 70 at 10.) The Second Amended Complaint included ten separate causes of action—most of which were previously unpled—ranging from federal and New Jersey state

---

[2] As the Court explained in that opinion, the deluge of filings from Plaintiff prevented the Court from ruling on Plaintiff's Motions for Leave to Amend before she filed *another* amended complaint. (*See* ECF No. 55 at 5–7.) Here, in light of Plaintiff's *pro se* status, the Court considered Plaintiff's initial complaint and final First Amended Complaint together as the "Operative Complaint" for the purposes of the Motion to Dismiss. (*See* ECF No. 55 at 11–12.)

statutory actions, civil conspiracy, negligence, and both intentional and negligent infliction of emotional distress. (ECF No. 57 at 3–10.) Plaintiff's Second Amended Complaint ultimately failed to cure the defects the Court previously identified and instead introduced a whole host of new problematic legal issues, including a litany of improperly joined defendants. (*See* ECF No. 70.) Accordingly, on February 11, 2025, the Court dismissed the case with prejudice as to the original defendants, and without prejudice—but without leave to amend—as to the other improperly-joined defendants. (ECF No. 71.)

Following the Court's February 2025 dismissal of the Second Amended Complaint, this closed case sat dormant for approximately seven months. That ended on September 16, 2025, when Plaintiff filed the subject Motion, purportedly pursuant to Rule 60(b), seeking to "reopen" this matter and amend her complaint once again. (ECF No. 72.)

What has occurred between February 2025 and September 2025 is somewhat difficult to discern.[3] In April 2025, it appears Plaintiff paid Defendants $75,325.30 in order to prevent the foreclosure sale she had been seeking to stave off throughout the course of the instant litigation, and elsewhere. (Motion at 2; Opp. at 4.) On June 19, 2025, the state trial court vacated the final foreclosure judgment and dismissed the action, ("Reiley Cert.," ECF No. 73-2 at Ex. D), and on July 21, 2025, the Superior Court of New Jersey, Appellate Division dismissed Plaintiff's appeal as moot. (*Id.* at Ex. E.)

There is no basis to reopen this under Rule 60(b). Very little in Plaintiff's proposed complaint has anything to do with *any* previous complaint, let alone the last-dismissed Second

---

[3] Although the facts are largely not in dispute, the Court's recitation of the facts is based on the parties' filings and its own assessment of the record. *Cement Masons and Plasterers Local Union 699 Annuity Fund v. Kerrigan Assocs.*, No 01-2383, 2008 WL 4559754, at *2 (D.N.J. Oct. 8, 2008) ("When a motion under Rule 60(b) involves a disputed question of fact, this Court acts as the factfinder.") (citing *Budget Blinds, Inc. v. White*, 536 F.3d 244, 260 (3d Cir. 2008)).

3

Amended Complaint. (*See* ECF No. 72-1.) The proposed Third Amended Complaint contains *entirely new* purported state causes of actions for "Avoid Liens" and "Quiet Title (Fraudulent Conveyance)." (*Id.* at 4–5.) Plaintiff—no longer seeking statutory damages under federal and state statutes—now requests compensatory and declaratory relief related to the mortgage. (*Id.* at 6.) The damages include, remarkably, the $75,325.30 Plaintiff paid PNC to reinstate her mortgage and stop the foreclosure of her home. (*Id.* at 4.) The Court cannot divine why Plaintiff improperly attempts to unwind the very transaction *she herself* undertook to avoid a foreclosure she so fervently fought against through this wholly unrelated and closed case—nor will it attempt to do so.

At best, Plaintiff's proposed complaint details an entirely distinct lawsuit far more suitable, if at all, in New Jersey state court. With that avenue apparently unavailable, Plaintiff has sought to revive this previously finished, unrelated federal suit pursuant to Rule 60(b). Under Rules 60(b)(5) and (b)(6)—the provisions of Rule 60 Plaintiff cites in her Motion—a court may relieve a party from a judgment or order where "(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5)–(6).

Neither provision is applicable to this case. As to Rule 60(b)(5), no judgment has been "satisfied, released, or discharged" in this case. Further, this Court's order dismissing Plaintiff's Second Amended Complaint was not "based on" the now-vacated state court foreclosure action. Rather, the Court independently held that Plaintiff's Second Amended Complaint failed to state a claim under Rule 12(b)(6), and that one claim was time-barred. (ECF No. 70 at 12–19.) While Plaintiff argues that it is "no longer equitable for the federal dismissal order to stand" with the state foreclosure action vacated, this prong of Rule 60(b)(5) is also inapplicable—the Court's order was not prospective. (Motion at 2); *United States v. Alsol Corp.*, 620 F. App'x 133, 135 (3d Cir. 2015)

("[Rule 60(b)(5)] empowers a court to modify a judgment only if its 'prospective,' or executory.") Thus, Rule 60(b)(5) does not provide Plaintiff with an avenue to relief.

Nor will the Court grant Plaintiff's Motion under Rule 60(b)(6). "A party seeking Rule 60(b)(6) relief must demonstrate the existence of 'extraordinary circumstances' that justify reopening the judgment." *Alsol Corp.*, 620 F. App'x at 135–36 (quoting *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008)). Extraordinary circumstances require a moving party to "demonstrate[] that 'extreme' and 'unexpected' hardship will result absent such relief." *Jackson v. Danberg,* 656 F.3d 157, 166 (3d Cir. 2011). By contrast, while understandably important to Plaintiff, the outcome of her state court foreclosure proceedings were quite *ordinary*: Plaintiff reinstated her mortgage loan, PNC moved to vacate its foreclosure judgment, and the state court dismissed the foreclosure action altogether—all things that appear to *benefit* Plaintiff. To that end, Plaintiff has not demonstrated any hardship—let alone "extreme" or "unexpected" hardship—requiring the Court to set aside its February 2025 order. Accordingly, Plaintiff's motion to reopen this case is **DENIED**.

## II. DEFENDANTS' CROSS-MOTION FOR ATTORNEY'S FEES AND COSTS

On October 2, 2025, in addition to opposing Plaintiff's Motion, Defendants cross-moved to recover their fees and expenses "incurred in opposing [Plaintiff's Rule 60(b) motion]." (Opp. at 1.) Defendants offer two bases for their cross-motion. First, Defendants argue that "express terms in the mortgage . . . allow PNC to recover fees for actions taken to protect its interest in the Property and its rights under the security instrument." (*Id.* at 13.) Defendants assert that Plaintiff's Motion "is a direct legal attack on PNC's interest in the Property and its rights under the Mortgage." (*Id.* at 14.) In the alternative, Defendants request that the Court exercise its inherent authority to sanction Plaintiff and award Defendants attorney's fees "for [Plaintiff's] bad-faith litigation conduct." (*Id.* at 15.)

5

A. CONTRACTUAL RIGHT TO FEES AND COSTS

Beginning with their contractual argument, Defendants point to sections of the original mortgage between Gateway Mortgage Group, LLC and Plaintiff that Defendants believe entitle them to attorney's fees and costs for defending against Plaintiff's Rule 60(b) motion.[4] (Reiley Cert. at Ex. G; *see also id.* at Ex. H (Gateway assigning mortgage to PNC).) Although Defendants do not specify the procedural grounds for their cross-motion, the Court treats Defendants' contractual argument for fees as a motion under Federal Rule of Civil Procedure 54(d)(2). *See Campbell v. Royal Bank Supplemental Exec. Ret. Plan*, 646 F. Supp. 3d 629, 638 (E.D. Pa. 2022) ("Attorney's fee awards are governed by Federal Rule of Civil Procedure 54(d)(2).") Such a motion must be made within 30 days of a judgment or order, L. Civ. R. 54.2(a), and must also include affidavits and other documents setting forth information necessary to calculate fees, including the nature of the services, the time spent on those services, and the normal billing rate of those who performed the services. *Id.* at 54.2(a)(1)–(5); *see Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J.*, 297 F.3d 253, 261 (3d Cir. 2002) (treating Local Civil Rule 54.2(a) as a standing order modifying Federal Rule of Civil Procedure 54(d)(2)). In short, within 30 days of a judgment or order, a party seeking attorneys' fees must file a motion with the appropriate information to determining the validity and value of those fees.

While Defendants' cross motion was within 30 days of Plaintiff's 60(b) motion, (*compare* Motion (filed September 12, 2025) *with* Opp. (filed October 2, 2025)), Defendants' motion did not follow "the entry of [a] judgment or order" within the last 30 days. L. Civ. R. 54.2(a); *see also* Fed. R. Civ. P. 54(d)(2)(B)(i) (attorney's fees motion must follow "entry of judgment"). The most

---

[4] Plaintiff does not contest the validity of the mortgage document attached to Defendants' cross-motion. (*See generally* Reiley Cert. at Ex. G.) The Court sees no reason to doubt the validity of the mortgage exhibit, as Plaintiff herself attached the same document to her initial complaint. (ECF No. 1-1 at 22–34.)

recent order of this Court—dismissing Plaintiff's Second Amended Complaint—was issued February 11, 2025, nearly 8 months before Defendants' fee motion. (ECF No. 71.) Defendants' motion for fees and costs incurred in defending against Plaintiff's Rule 60(b) motion must be made within 30 days following the *order* on that motion and must include the appropriate affidavits and content as specified by Local Rule 54.2. L. Civ. R. 54.2(a)(1)–(5); *see Dunkin' Donuts, Inc. v. Liu*, No. 99-3344, 2002 WL 32348280, at *5 (E.D. Pa. Apr. 17, 2002) (recommending deferral of decision on "premature" request for award of attorneys' fees required by contract prior to the court's entry of judgment). In order to ensure the Court adheres to the plain language of the Federal and Local Rules, Defendants' first basis for attorney's fees must be denied.[5]

## B. Inherent Authority

Furthermore, the Court declines to exercise its inherent authority to sanction Plaintiff and award Defendants attorney's fees. Although the Court possesses the inherent authority to award such fees, particularly "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal quotation marked omitted), the Third Circuit has cautioned that there must be "adequate factual predicate for flexing its substantial muscle under its inherent powers, and [courts] must also ensure that the

---

[5] In denying Defendants' cross-motion as procedurally premature, the Court passes no judgment on the validity of Defendants' contractual argument. Federal courts from around the country appear to have regularly found that the boilerplate fee-shifting language in mortgage contracts like Plaintiff's requires the award of attorney's fees in arguably comparable cases under different states' laws. *See, e.g.*, *U.S. Bank Nat'l Assoc. v. Edwards*, No. 16-1307, 2019 WL 2331704, at *2 (D. Or. Mar. 14, 2019). Further, in at least one unpublished opinion, the Superior Court of New Jersey, Appellate Division upheld an award of attorney's fees based on similar contractual language to the contract language at issue here, albeit in a different procedural posture. *See Wells Fargo Bank, NA v. Schiano*, No 3404-22, 2025 WL 2025820 (N.J. Super. Ct. App. Div. July 21, 2025). However, other courts in this district have held that under New Jersey law, attorney's fees "pursuant to a contract [are] an element of damages that must be pleaded and proved at trial," requiring a moving party to "bring a separate action in a court of competent jurisdiction" to seek a fees and costs award—not by motion under Rule 54(d)(2). *See Sokoloff v. Gen. Nutrition Cos., Inc.*, No. 00-641, 2001 WL 536072, at *8 (D.N.J. May 21, 2001); *but see Shafer*, 2010 WL 743983, at *1 n.2 (distinguishing *Sokoloff* as applying to "contractual claims [for attorney's fees that are] not resolved," as when entitlement to fees are available to a "prevailing party").

sanction is tailored to address the harm identified." *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). Construed liberally, Plaintiff's filing of the instant motion followed certain developments in her state foreclosure suit that—giving her the benefit of the doubt—she interpreted as reasonable grounds to move to reopen this case. The Court concludes that using its inherent authority to award fees at this juncture would be an inappropriate "flexing" of its substantial muscle, at least for the time being.

However, given Plaintiff's history of usurping the resources of this and other courts, should Plaintiff's vexatious filings resume, the Court will consider a future motion for fees under its inherent authority, Rule 11(c)(2), or otherwise. Accordingly, Defendants' cross-motion for fees is **DENIED**.

**THEREFORE**, it is on this 1st day of December, 2025, **ORDERED** that:

1. Plaintiff's Motion to Reopen and Amend her Complaint (ECF No. 72) is **DENIED**;

2. Defendants' Cross Motion for Attorneys' Fees and Costs (ECF No. 73) is **DENIED**; and

3. The Clerk's Office will **TERMINATE** the motions pending at ECF Nos. 72 and 73.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**